**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-1174

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ANTHONY QUINN WELCH,
a/k/a Tony Welch,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

(April 7, 1994)

Before GOLDBERG, DAVIS, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Anthony Quinn Welch pled guilty to five counts of aiding in the preparation of false tax returns. He now appeals his sentence. We affirm the sentence with an adjustment to the term of supervised release.

I.

Welch owned and managed All Pro Sports, representing himself as a professional sports agent. Welch sought and received tax return information during 1990 and 1991 from four client-athletes

to prepare their tax returns.  In five separate instances,[1] Welch submitted this tax return information, along with additional false tax information, to a certified public accountant or other income tax preparer, who then used the information to prepare each client's individual tax return.  The false information included losses from businesses never owned by the clients and deductions that the clients were not entitled to receive.  As a result of the false information Welch provided, the athletes' tax returns showed inflated refunds.

Welch then obtained the prepared tax returns and had them electronically filed with the Internal Revenue Service by an electronic transmitter.  The returns contained instructions directing the refunds to be deposited directly into various bank accounts controlled by Welch.[2]  As a result of the false tax return information, five refund claims totaling $105,817 were made against the IRS, and the government lost $29,045.17.

In April 1992, Welch was indicted on five counts of aiding in the preparation of false tax returns.  26 U.S.C. § 7206(2).  Welch pled guilty to all five counts of the indictment.  In February

---

[1]Welch filed a total of five false claims for the four athletes.  He filed two claims for one of the athletes and filed one claim each for the others.

[2]The athletes gave Welch what they believed to be true and correct information for the purpose of having their tax returns prepared.  They had no knowledge of the additional false information submitted to the tax return preparers by Welch. Furthermore, Welch's attempt to have the refunds deposited into accounts that he controlled took place without the clients' knowledge or consent.

1993, the district court sentenced Welch in accordance with the pre-sentence investigation (PSI) to 33 months in prison on each count to be served concurrently, followed by three years of supervised release.  The district court also imposed a mandatory $250 special assessment.  Welch now appeals his sentence.

## II.

### A.

Welch first argues, and the government concedes, that the district court improperly classified Welch's violation of 26 U.S.C. § 7206(2) as a Class D felony, authorizing a three-year term of supervised release under 18 U.S.C. § 3583(b)(2).  We agree.  Each violation of § 7206(2) carries a maximum penalty of three years imprisonment and therefore is classified as a Class E felony under 18 U.S.C. § 3559(a)(5).  Welch should have been sentenced to a one-year rather than three-year term of supervised release after imprisonment.  18 U.S.C. § 3583(b)(3).  Accordingly, this portion of Welch's sentence is vacated, and the term of supervised release is amended to one year.  See United States v. Stokes, 998 F.2d 279, 282 (5th Cir. 1993).

### B.

Welch next argues that the district court incorrectly increased his base offense level by two levels under U.S.S.G. § 2T1.4(b)(1) (Nov. 1992).[3]  That provision authorizes a two-level

_____

[3]Absent contrary instructions from the Sentencing Commission, amendments to the Guidelines are prospective.  See United States v. Windham, 991 F.2d 181, 183 (5th Cir. 1993).  Thus, the Fifth Circuit should apply the Guidelines in effect at the time of Welch's sentencing, i.e., the November 1992 Guidelines.

increase for tax fraud "[i]f the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income." U.S.S.G. § 2T1.4(b)(1).

The Guidelines do not specify what constitutes a "substantial portion" of one's income. The sentencing court must make that finding on its own. In this case, the sentencing court borrowed the quasi-formula from the Guidelines' criminal livelihood provision. Specifically, the provision defines "engaged in as a livelihood" as: "(1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct)." U.S.S.G. § 4B1.3 comment. (n.2).

Welch argues that § 4B1.3 should not have been used because the Guidelines do not explicitly authorize the sentencing court to refer to this section when determining whether a defendant has earned a substantial portion of his income from tax fraud. He claims that because the language of § 2T1.4(b)(1) itself and its accompanying commentary do not mention § 4B1.3, the Sentencing Commission did not intend for it to be applied to § 2T1.4(b)(1).

We first note that the sentencing court's finding that Welch derived a substantial portion of his income from tax fraud was a

4

factual one and, therefore, was reviewable only for clear error. <u>United States v. Mejia-Orosco</u>, 867 F.2d 216, 221 (5th Cir. 1989).[4]

We find no such error. The sentencing court's reference to § 4B1.3 to determine that Welch derived a substantial portion of his income under § 2T1.4(b)(1) was proper because § 4B1.3 is intended to supplement the various specific offenses in Chapter 2 of the Guidelines, including § 2T1.4(b)(1). Congress originally directed the Sentencing Commission to specify a substantial term of imprisonment for individuals who derive a substantial portion of their income through illegal activities. <u>See</u> 28 U.S.C. § 994(i)(2).[5] Section 4B1.3 merely fulfills Congress's directive. <u>See</u> § 4B1.3 comment. (backg'd) (reiterating § 944(i)(2)'s directive). In particular, § 4B1.3 provides a quasi-formula to determine whether the defendant's criminal activity constituted his or her livelihood. <u>See</u> § 4B1.3 comment. (n.2). If so, a

---

[4]Welch argues that the court's finding was a legal one because the court applied a separate Guideline provision in reaching its conclusion. Welch's argument is not without merit; the difference between factual and legal findings is not always clearly recognized. Still, we point out that "findings which require both assessment of complex evidence as well as sensitivity to legal purposes may nevertheless be factual." <u>Id</u>. (citing <u>Wainwright v. Witt</u>, 469 U.S. 412 (1985)). The sentencing court's finding here was factual because it used § 4B1.3 only as a guide in reaching its factual finding under § 2T1.4.

[5]Section 994(i)(2) states "[t]he Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income."

substantial portion of the defendant's income, in fact, comes from the proscribed conduct.[6]

Furthermore, in recent years we have upheld the application of § 4B1.3 to other specific offenses, even though the specific offenses make no reference to the criminal livelihood provision. See, e.g., U.S. v. Quertermous, 946 F.2d 375, 377 (5th Cir. 1991) (applying § 4B1.3 to § 2B1.1); U.S. v. Cryer, 925 F.2d 828, 829 (5th Cir. 1991) (same). While the issue in Quertermous and Cryer was whether the criminal conduct satisfied § 4B1.3's minimum dollar amount, both cases nonetheless applied the provision to specific offenses. We see no material distinction between § 2T1.4 and the specific offense provisions that were at issue in Quertermous and Cryer.

Having determined that the sentencing court correctly used § 4B1.3 as a guide in applying § 2T1.4(b)(1) in this case, we now review the result the court reached. We find no error in the court's finding that Welch received "a substantial portion" of his income by filing fraudulent returns. The government lost at least $29,000 from Welch's fraudulent scheme, which is enough to satisfy § 4B1.3's minimum dollar requirement. In addition, Welch was

---

[6]The government persuasively notes that, although § 2T1.4 does not specifically refer to § 4B1.3, the wording of each is nearly identical. Section 2T1.4 provides for a two level increase "[i]f the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income."

Section 4B1.3's commentary background states "[s]ection 4B1.3 implements 28 U.S.C. § 944(i)(2), which directs the Commission to ensure that the guidelines specify a 'substantial term of imprisonment' for a defendant who committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income."

unable to show evidence of any legitimate employment or source of income since 1986. In sum, the sentencing court found that Welch's primary occupation was the filing of fraudulent tax returns, through which he gained a substantial portion of his income. Because the district court "enjoys wide latitude in implementing the Sentencing Guidelines, particularly regarding findings of fact," U.S. v. Quertermous, 946 F.2d 375, 377 (5th Cir. 1991), we will not disturb its finding here.

C.

Welch's last argument is that the district court erred in increasing his base offense level by two levels pursuant to former § 2T1.4(b)(3). That provision provides that "[i]f the defendant was in the business of preparing or assisting in the preparation of tax returns, increase by 2 levels." U.S.S.G. § 2T1.4(b)(3) (Nov. 1992).[7] Welch argues that his primary occupation was as a sports agent and that he offered to prepare tax returns for clients only as an added service. He claims that he did not regularly file returns for or provide tax advice to the general public. Instead, he claims, he merely employed a tax preparer or CPA to prepare the tax returns of his clients and, therefore, former § 2T1.4(b)(3) does not apply.

We conclude that the sentencing court's finding was a factual one.[8] We therefore review it only for clear error, Mejia-Orosco,

_____

[7]See supra note 3.

[8]Until now, we had not addressed former § 2T1.4(b)(3) and what constitutes being "in the business" of filing fraudulent tax returns. We have addressed, however, a similar provision: former

7

867 F.2d at 221, and again find no such error. We first dismiss Welch's notion that § 2T1.4(b)(3) is limited to those tax preparers who "hang out a shingle." Section 2T1.4(b)(3) is not limited to officially licensed tax preparers; the provision covers those who are "in the business of . . . assisting in the preparation of tax returns." § 2T1.4(b)(3) (emphasis added). The commentary additionally provides that "[s]ubsection (b)(3) applies to persons who regularly act as tax preparers or advisers for profit." § 2T1.4, comment. (n.3).

The sentencing court in this case found that Welch's true occupation was not as a sports agent but as an organizer and preparer of fraudulent tax returns for profit. Welch was not licensed or recognized as a sports agent and was unable to provide evidence of legitimate profits as a sports agent. Furthermore, Welch failed to demonstrate that he was otherwise gainfully employed, and he played the principal role in the drafting and filing of at least five individual fraudulent tax returns over a three-year period. He also misrepresented himself at least once as a CPA. We find no error in the sentencing court's finding that Welch was "in the business" of filing fraudulent tax returns.

---

§ 2B1.2(b)(3)(A), which provided a four-point enhancement if the defendant was "in the business of receiving and selling stolen property." U.S.S.G. § 2B1.(b)(3)(A) (Nov. 1989). In United States v. Esquivel, 919 F.2d 957 (5th Cir. 1990), we affirmed the enhancement of a defendant's sentence for stolen property, though the conduct at issue was not prolonged or sustained. The Court relied on the size and sophistication of the defendant's operation in order to justify the increase. Id. at 960-961.

## III.

Because the sentencing court findings were not clearly erroneous, we AFFIRM Welch's sentence AS AMENDED.