**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Samuel ARAGBAYE, Defendant–**
**Appellant.**

**No. 99–50603.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 2000

Filed Dec. 13, 2000

Firdaus Dordi, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Elana S. Artson, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: TASHIMA and TALLMAN, Circuit Judges, and ALSUP, District Judge.*

TASHIMA, Circuit Judge:

Samuel Aragbaye ("Appellant") appeals the sentence imposed by the district court following his guilty plea to violations of 18 U.S.C. §§ 287 (presenting false claims against the United States) and 371 (conspiring to defraud the United States). Appellant contends that the district court erred in relying on the sentencing guidelines for tax offenses rather than the guidelines for fraud in imposing his sentence. Appellant further contends that the district court erred in applying sentencing enhancements for being a tax preparer and for use of sophisticated means. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Appellant was the owner of a tax preparation business named Teko Tax & Accounting Service. In the course of this business, Appellant[1] filed false income tax returns with the Internal Revenue Service ("IRS"), seeking refunds based on false claims regarding dependents, expenses, fuel tax credits, and earned income credits. He filed more than 1,500 false tax returns, resulting in an "intended loss" of over $5 million. Appellant prepared the false returns by using the names of (1) individuals "solicited to have their tax returns prepared by" Appellant, (2) people who were indigent or receiving state aid and did not know their names and social security numbers were being used to file tax returns, and (3) children whose names were obtained from someone working for Children's Social Services. Appellant also made use of an unrelated, legitimate payroll company, named Precision Payroll, that maintains employee payroll records and issues paychecks and W–2 forms. Appellant created a fictitious company, TIG, and provided Precision Payroll with the names, social security numbers, and numbers of hours worked per pay period of 35 fictitious employees, in order to generate W–2 forms to be used in filing false tax returns.

Appellant directed his employees to prepare the tax returns by using nearly identical information, providing them with lists of names and social security numbers. The IRS ultimately issued at least $551,664.63 in tax refunds. Appellant opened post office boxes at which to receive the tax refunds, and used check cashing businesses, including one he opened himself and one run by a co-conspirator, to cash the checks.

Appellant pled guilty to one count of conspiracy to present false claims against the United States, in violation of 18 U.S.C. § 371, and to two counts of presenting false claims against the United States, in violation of 18 U.S.C. § 287.[2] The district court concluded that the guidelines for tax offenses, rather than the fraud guideline recommended by the U.S. Sentencing Guidelines Manual, should be used to calculate Appellant's sentence. The court further added enhancements for being a tax preparer, for use of sophisticated

---

* The Honorable William Alsup, United States District Judge for the Northern District of California, sitting by designation.

1. Appellant actually worked with several co-conspirators; however, we refer only to Appellant.

2. Section 371 criminalizes conspiracies "either to commit any offense against the United States, or to defraud the United States, or any agency thereof." 18 U.S.C. § 371 (2000). Section 287 provides that it is a crime to "make[ ] or present[ ] to any person ... in the civil ... service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287 (2000).

means, and for Appellant's leadership role, resulting in a base offense level of 29. The court then decreased the level for acceptance of responsibility, which, with a criminal history category of I, resulted in a sentencing range of 63 to 78 months. The court sentenced Appellant to 78 months of imprisonment. Appellant timely appeals his sentence.

## DISCUSSION

### I. Application of Tax Guidelines

The U.S. Sentencing Guidelines Manual directs the sentencing court to "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.,* the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." USSG § 1B1.2(a) (1997).[3] The Statutory Index, found in Appendix A of the Guidelines, "provides a listing to assist in this determination." USSG § 1B1.2, cmt. n. 1. "The guidelines cross-referenced in the Statutory Index are not mandatory," however. *United States v. Fulbright,* 105 F.3d 443, 453 (9th Cir.1997). The Index "merely points the court in the right direction. Its suggestions are advisory: what ultimately controls is the 'most applicable guideline.' " *United States v. Cambra,* 933 F.2d 752, 755 (9th Cir.1991).

The Statutory Index recommends the use of USSG § 2F1.1, the fraud guideline, for a violation of 18 U.S.C. § 287. *See* USSG app. a. For a violation of § 371, the Index refers to various guidelines, depending on the type of conspiracy—for example, § 2A1.5 for conspiracy to commit murder, § 2C1.7 for conspiracy to defraud by interference with governmental functions, and, relevant here, § 2T1.9 for conspiracy to impede, impair, obstruct, or defeat tax. *See id.* The Introduction to the Index notes, however, that, "in an atypical case,

the guideline section indicated for the statute of conviction [may be] inappropriate because of the particular conduct," in which case the court is to "use the guideline section most applicable to the nature of the offense conduct," referring to USSG § 1B1.2. *Id.*

The district court rejected Appellant's objections to the Presentence Report ("PSR") and concluded that the general fraud guideline in § 2F1.1 was not applicable because it was not "the most applicable guideline to the offense of conviction." The court reasoned that Appellant's conduct constituted "tax fraud, a more specific genre of false claims against the United States, because it is based upon the manipulation of the tax laws provisions within the overall taxing scheme of the United States." The court thus relied on § 2T1.4 (for aiding, assisting, procuring, counseling, or advising tax fraud) and § 2T1.9 (conspiracy to impede, impair, obstruct, or defeat tax) in determining Appellant's sentence. The court further relied on Application Note 1 to § 1B1.2, which states that "[w]hen a particular statute proscribes a variety of conduct that might constitute the subject of different offense guidelines, the court will determine which guideline section applies based upon the nature of the offense conduct charged in the count of which the defendant was convicted." USSG § 1B1.2, cmt. n. 1. Reasoning that §§ 371 and 287 "proscribe a variety of conduct," the court decided that the tax guidelines were the most applicable to the specific conduct.

■ Whether a particular guideline applies to a specific set of facts is subject to de novo review. *See Fulbright,* 105 F.3d at 453; *United States v. Koff,* 43 F.3d 417, 419 (9th Cir.1994). "[D]ue deference is given to the district judge's application of the Guidelines to the facts." *United States v. Van Krieken,* 39 F.3d 227, 230 (9th Cir.1994).

---

**3.** The 1997 version of the Guidelines was used in determining Appellant's sentence. We

therefore rely on the 1997 version throughout.

Although Appellant was charged under § 287 for presenting false claims against the United States, the entire scheme was based on filing fraudulent tax returns. Appellant's situation is thus similar to that in *United States v. Hopper,* 177 F.3d 824 (9th Cir.1999), *cert. denied,* 528 U.S. 1163, 120 S.Ct. 1179, 145 L.Ed.2d 1086, *and cert. dismissed sub nom. United States v. Reed,* —— U.S. ——, 120 S.Ct. 1578, 146 L.Ed.2d 477 (2000), where the defendants were not convicted under tax statutes, but their offense conduct related to a tax scheme. The defendants in *Hopper* were convicted of conspiracy under § 371 and obstruction of proceedings under 18 U.S.C. § 1505. Although the guideline specified by the Index for a violation of § 1505 is § 2J1.2, Obstruction of Justice, we upheld the district court's application of the tax conspiracy guideline because § 2J1.2 did not adequately address the seriousness of the defendants' conduct and "the amount of tax liability [they] attempted to obstruct." *Id.* at 832.

Moreover, the statute under which Appellant was charged is a general statute. Section 287 criminalizes the presentation of any false, fictitious, or fraudulent claim against the United States. The commentary to USSG § 2F1.1 states:

> Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense is also covered by a more specific statute.... Where the indictment or information setting forth the count of conviction ... establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1.

USSG § 2F1.1, cmt. n. 13. The commentary thus specifically considers a situation such as that found here, where the defendant is charged under a general statute, but the offense conduct is "more aptly covered by another guideline."

Appellant argues that §§ 2T1.9 and 2T1.4 apply only to offenses involving interference with the collection of taxes, not

an offense whose "objective was simply to obtain money." In support of this contention, Appellant quotes Application Note 1 to § 2T1.9, which states that "[t]his section applies to conspiracies to 'defraud the United States by impeding, impairing, obstructing and defeating ... the collection of revenue.'" USSG § 2T1.9, cmt. n. 1 (quoting *United States v. Carruth,* 699 F.2d 1017, 1021 (9th Cir.1983)). The note goes on to state that § 2T1.9 "does not apply to taxpayers, such as a husband and wife, who merely evade taxes jointly or file a fraudulent return." *Id.*

While it is true that the sentencing guidelines commentary "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation,'" it is not "binding in all instances." *Stinson v. United States,* 508 U.S. 36, 43, 44, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). Even if the commentary were binding, the Application Note does not limit the application of § 2T1.9 to only those tax offenses that specifically are intended to impede the *collection* of tax revenue, which, according to Appellant's argument, only means offenses such as money laundering or false tax shelters. Rather, reading the entire note reveals that the purpose of the note is to distinguish between an actual conspiracy, to which § 2T1.9 is properly applicable, and mere joint filers of a tax return, to which it does not apply. The commentary does not preclude the application of § 2T1.9 to a tax offense involving fraudulent claims of tax refunds, and it makes no sense to draw a distinction between impeding collection of revenue and the fraudulent disbursement of revenue.

Appellant's offense conduct was at heart a scheme to file fraudulent tax returns and thus "could be considered on par with" tax fraud. *Van Krieken,* 39 F.3d at 231. The district court, accordingly, did not err in applying the tax guidelines rather than the fraud guideline. *See United States v. Ve-*

*lez,* 113 F.3d 1035, 1038 (9th Cir.1997) (holding that the district court erred in applying the fraud guideline designated by the Index because the "more applicable guideline" was § 2L2.1, which "[b]y its very title ... concerns false statements relating to naturalization and immigration"); *Koff,* 43 F.3d at 418–19 (upholding the district court's application of § 2J1.2, Obstruction of Justice, to a violation of 26 U.S.C. § 7212, rather than the assault guidelines designated by the Index); *Van Krieken,* 39 F.3d at 231 (upholding the application of the obstruction of justice guideline, rather than the tax guideline, for a conviction under 26 U.S.C. § 7212 because the defendant's conduct "could be considered on par with obstruction of justice"); *United States v. Hanson,* 2 F.3d 942, 947–48 (9th Cir.1993) (the district court "correctly determined that the assault guidelines specified in the index were inapplicable to the instant case," where the defendant filed a false tax return and various false forms with the IRS in violation of 26 U.S.C. §§ 7206 and 7212(a)). In sum, the district court did not err in employing the tax guidelines rather than the fraud guidelines.

## II. Enhancements

### A. Tax Preparer Enhancement

■ Section 2T1.4(b)(1)(B) provides for a two-level enhancement if the defendant "was in the business of preparing or assisting in the preparation of tax returns." The district court decided that the enhancement was appropriate "based upon the evidence before the Court." The PSR applied the enhancement because Appellant was the owner of a financial service company, "doing business as a tax return preparer." Whether Appellant was in the business of tax preparation is a factual finding reviewed for clear error. *See United States v. Lopez–Sandoval,* 146 F.3d 712, 716 (9th Cir.1998) (district court's de-

termination that a defendant was a leader for purposes of enhancement is reviewed for clear error); *United States v. Welch,* 19 F.3d 192, 195 (5th Cir.1994) (sentencing court's finding that defendant was in the business of tax preparation is factual finding reviewed for clear error); *but cf. United States v. Petersen,* 98 F.3d 502, 506 n. 4 (9th Cir.1996) (discussing whether a district court's determination that a defendant used a "special skill" under USSG § 3B1.3 is reviewed for clear error, abuse of discretion, or de novo); *United States v. Zuniga,* 66 F.3d 225, 228 (9th Cir.1995) (applying de novo review to determination that defendant was "in the business of receiving and selling stolen property" as a mixed question of law and fact).[4]

■ The guideline does not specify whether the enhancement should be applied to a defendant whose tax preparation business consists solely of preparing fictitious tax returns, as opposed to a defendant with a legitimate tax preparation business who commits tax fraud in the course of that business. The commentary to § 2T1.4 states, however, that the enhancement was intended for "those who *make a business of promoting tax fraud* because their misconduct poses a greater risk of revenue loss and is more clearly willful." USSG § 2T1.4, cmt. (backg'd) (emphasis added). Applying the enhancement to someone whose sole business is that of promoting tax fraud thus seems consistent with the intent of the guideline. Moreover, someone whose tax preparation business consists solely of preparing fictitious returns poses just as great, if not a greater risk of revenue loss than someone who commits tax fraud in the course of a legitimate business, and the misconduct is clearly just as willful. Application of the enhancement to a defendant in Appellant's position, therefore, furthers the policy of enhancing the sentence of a defendant who uses his special skill and knowledge about

---

4. We need not choose between these standards of review because we conclude that the district court's application of the tax preparer enhancement was proper under *any* standard of review.

the tax system to manipulate it fraudulently. We hold, therefore, that the tax preparer enhancement applies to a defendant who is in the business of preparing fictitious tax returns. *Accord Welch,* 19 F.3d at 196 (reasoning that the enhancement was "not limited to officially licensed tax preparers," the Fifth Circuit found no error in the district court's finding that the defendant was "in the business of filing fraudulent tax returns") (internal quotation marks omitted); *cf. United States v. Moore,* 997 F.2d 55, 59 (5th Cir.1993) (the district court's application of the tax preparer enhancement was not challenged where the defendants were in the business of preparing illegal amended tax returns).

■ An analogy to the enhancement in USSG § 2B1.1 for being "in the business of receiving and selling stolen property" supports the application of the tax preparer enhancement to Appellant's situation. In *Zuniga,* the court adopted the "totality of the circumstances" test to determine whether the enhancement in § 2B1.1 should apply. *See* 66 F.3d at 228–29. Under this test, "the sentencing judge undertakes a case by case approach with emphasis on the 'regularity and sophistication of a defendant's operation.'" *Id.* at 228 (quoting *United States v. St. Cyr,* 977 F.2d 698, 703 (1st Cir.1992)); *see also St. Cyr,* 977 F.2d at 703–04 (reasoning by analogy to the tax preparer enhancement in § 2T1.4 that "more than isolated, casual, or sporadic activity [must] be shown before a business is found to exist"); *cf. United States v. Phipps,* 29 F.3d 54, 56 (2d Cir. 1994) ("If a defendant is shown to have prepared or assisted in the preparation of tax returns on more than an occasional or sporadic basis, the sentencing court may find that he provided those services regularly; and if it finds that he was paid for those services, the court may properly con-

clude that he was in the business of preparing tax returns within the meaning of § 2T1.4(b)(3)."). Based on this standard of regularity and sophistication, or "more than isolated, casual, or sporadic activity," the enhancement properly applies to Appellant's conduct.[5]

■ The record indicates that Appellant owned at least one, if not two, tax preparation businesses. He stated at his sentencing hearing that he went to tax school, and he filed applications with the IRS for electronic filing identification numbers as a tax preparer. He identified himself as a tax preparer when submitting an application with a bank to participate in a program that allows taxpayers to receive advances based on anticipated tax refunds. The district court did not err in applying the tax preparer enhancement.

**B. Sophisticated Means Enhancement**

■ Section 2T1.4(b)(2) provides for a two-level enhancement if "sophisticated means were used to impede discovery of the existence or extent of the offense." Application Note 3 provides as follows:

> "Sophisticated means," as used in § 2T1.4(b)(2), includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts or transactions through corporate shells or fictitious entities.

USSG § 2T1.4, cmt. n. 3. The district court applied the enhancement "based upon the evidence adduced here on the record." The district court's finding that Appellant used sophisticated means is a finding of fact reviewed for clear error. *See United States v. Ford,* 989 F.2d 347, 351 (9th Cir.1993); *cf. United States v. Friend,* 104 F.3d 127, 129 (7th Cir.1997) (applying

---

**5.** The record is unclear as to whether Appellant received payment from legitimate clients for tax preparation services. The Second Circuit in *Phipps* suggests that being paid for such services is a requirement before the court may conclude that a defendant was in the business of preparing tax returns for purposes of the enhancement. *See Phipps,* 29 F.3d at 56. The evidence in the instant case, however, supports application of the enhancement, with or without a finding that Appellant was paid for tax preparation services.

clear error review for sophisticated means enhancement); *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir.1996) (same).

■ Appellant's scheme was "sufficiently more complex" than routine tax evasion. *Ford*, 989 F.2d at 351. Appellant went to tax school and made use of tax credits that the average taxpayer would not be knowledgeable about. He applied for an electronic filing identification number with the IRS using a false name and social security number; set up tax preparation businesses through which he perpetrated his fraud; duped Precision Payroll into preparing W–2 forms for fictitious employees by providing names, social security numbers, and hours worked; opened numerous post office boxes ultimately employing 141 different addresses at which to receive the fraudulently obtained tax refunds; and opened a check cashing business in order to deposit the fraudulently obtained refunds. While this scheme may not be "singularly or uniquely sophisticated, it is more complex than the routine tax-evasion case in which a taxpayer reports false information on his 1040 form to avoid paying income taxes." *United States v. Lewis*, 93 F.3d 1075, 1082 (2d Cir.1996).

Appellant's scheme certainly rivals in sophistication other cases in which the sophisticated means enhancement was applied. *See, e.g., id.* (scheme "used numerous fictitious entities and multiple checks with the sole purpose of evading taxes and avoiding IRS detection," and was "crafted by ... an accounting firm with knowledge of the tax code and system"); *Ford*, 989 F.2d at 351 (using foreign corporation to claim foreign tax credit improperly); *United States v. Jagim*, 978 F.2d 1032, 1042 (8th Cir.1992) (upholding the sophisticated means enhancement where the conspirators conceived a tax shelter scheme, brought other participants in, prepared and signed many false tax forms, and were "affirmatively making profits from this scam"). This is unlike *United States v. Rice*, 52 F.3d 843 (10th Cir.1995), where the defendant "merely claimed to have paid withholding taxes he did not pay," and so should not have received the so-

phisticated means enhancement. *Id.* at 849.

Appellant argues that merely "using unauthorized social security numbers, filing false tax returns and having tax refund checks mailed to a mail drop" is not as sophisticated as using "fictitious entities, corporate shells or offshore bank accounts." "There is nothing talismanic about the use of shell corporations," however. *Lewis*, 93 F.3d at 1082. Appellant's scheme was "extensively planned and executed with careful attention to detail," much more sophisticated than a routine tax evasion case in which "an individual taxpayer completed his individual 1040 form with false information to avoid paying some of his federal taxes." *Jagim*, 978 F.2d at 1042. The district court did not err in applying the sophisticated means enhancement.

For all the foregoing reasons, the sentence imposed by the district court is AFFIRMED.