**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gumesindo MONTANO, Defendant–**
**Appellant.**

**No. 00–50255.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 16, 2001

Filed May 7, 2001

---

Inge Brauer, San Diego, California, for the defendant-appellant.

Melanie K. Pierson, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: TASHIMA and FISHER, Circuit Judges, and ZILLY, District Judge.[*]

TASHIMA, Circuit Judge:

Gumesindo Montano appeals the sentence imposed by the district court following his guilty plea to one count of a conspiracy to smuggle merchandise and introduce unapproved drugs into interstate commerce, in violation of 18 U.S.C. §§ 371 and 545, and 21 U.S.C. §§ 331(d) and 333(a)(2). The district court sentenced Montano to 21 months' imprisonment. Montano contends that the district court erred in determining his base offense level, and in enhancing his sentence for sophisticated concealment and for his role in the offense. He also contends that the application of both enhancements constituted impermissible double-counting. We have jurisdiction pursuant to 18 U.S.C. § 3742, and 28 U.S.C. § 1291. We affirm the sentence in all respects, except the sophisticated concealment enhancement; accordingly, we remand for resentencing.

## BACKGROUND

In February 1999, Luis and Rosalina Salazar were arrested at the San Ysidro port of entry from Mexico into the United States for attempting to smuggle approximately $40,000 worth of Mexican pharmaceuticals into the United States. The Salazars entered into plea agreements with the government, pursuant to which felony charges were dismissed; they pled guilty to misdemeanors, and agreed to testify against Montano. The Salazars testified before a grand jury that, in March 1998, they agreed to smuggle Mexican medicines into the United States for Montano to sell at his gift shop in Arleta, California. The conspiracy lasted from approximately March 1998 to March 1999. The general modus operandi was that Montano would deposit money into the Salazars' bank account to buy the pharmaceuticals, then call the Salazars to inform them of the deposit.[1] The Salazars would then withdraw the money to buy the pharmaceuticals, pick up the pharmaceuticals in Mexico, cross the border, and deliver them to Montano.[2]

Montano pled guilty to one count of a conspiracy to smuggle unapproved pharmaceuticals from Mexico into the United States, in violation of 18 U.S.C. §§ 371 and 545, and 21 U.S.C. §§ 331(d) and 333(a)(2).[3] The district court sentenced

---

[*] The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

1. Montano made the deposits in the Los Angeles area, near his place of business. The Salazars withdrew the money from bank branches near their home in the San Diego area.

2. On some occasions, Montano would purchase the pharmaceuticals himself and deliver them to the Salazars in Mexico, then meet them in the United States.

3. 18 U.S.C. § 371 criminalizes conspiracies to commit an offense against the United States or to defraud the United States. 18 U.S.C. § 545 criminalizes the smuggling of merchan-

Montano to 21 months' imprisonment, based on a Criminal History Category of II and a base offense level of 14. The court relied on United States Sentencing Guidelines Manual ("USSG") § 2T3.1, Evading Import Duties or Restrictions (Smuggling), which directs the sentencing court to determine the offense level from the level in the Tax Table in USSG § 2T4.1 that corresponds to the amount of the tax loss. The court agreed in part with the government's method of calculating the tax loss, but also agreed with Montano's argument that a 20 percent profit for the Salazars should be deducted before determining the offense level. The court added enhancements for sophisticated concealment of the offense, pursuant to USSG § 2T3.1(b)(1), and for Montano's supervisory role in the offense, pursuant to USSG § 3B1.1(c), but applied a downward adjustment for acceptance of responsibility. The resulting offense level of 15 carried a guideline range of 21–27 months, and the court sentenced Montano to the low end of the range. Montano filed a timely notice of appeal.

### STANDARD OF REVIEW

■ The district court's interpretation and application of the sentencing guidelines are reviewed de novo. *United States v. Castillo*, 181 F.3d 1129, 1134–35 (9th Cir.1999), *cert. denied*, —— U.S. ——, 121 S.Ct. 1502, 149 L.Ed.2d 386 (2001). The court's factual findings are reviewed for clear error. *Id.* at 1135. The district court's finding that the offense involved

sophisticated concealment is a finding of fact reviewed for clear error. *See United States v. Aragbaye*, 234 F.3d 1101, 1107 (9th Cir.2000) (applying clear error review to the sophisticated means enhancement for tax fraud in USSG § 2T1.4); *United States v. Ford*, 989 F.2d 347, 351 (9th Cir.1993) (reviewing for clear error a finding that the appellant used sophisticated means pursuant to USSG § 2T1.3(b)(2)). The district court's determination that a defendant was an organizer or leader for purposes of applying the sentencing enhancement in USSG § 3B1.1 is reviewed for clear error. *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995).

### DISCUSSION

### I. Base Offense Level

■ The guideline applicable to a violation of 18 U.S.C. § 371, conspiracy to commit an offense against the United States or to defraud the United States, is USSG § 2X1.1. Section 2X1.1(a) provides that the base offense level is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." The underlying substantive offenses were smuggling merchandise, in violation of 18 U.S.C. § 545, and the introduction of unapproved drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(d) and 333(a)(2). The parties agreed that the smuggling guideline, USSG § 2T3.1, was the proper guideline to determine the base offense level.[4]

---

dise into the United States. 21 U.S.C. §§ 331(d) and 333(a)(2) prohibit the introduction into interstate commerce of unapproved drugs with the intent to defraud or mislead.

4. A conviction on a conspiracy count charging a conspiracy to commit more than one offense is treated as if the defendant had been convicted on a separate count of conspiracy

for each offense that he conspired to commit. USSG § 1B1.2(d). The guideline applicable to 21 U.S.C. §§ 331(d) and 333(a)(2) would be § 2F1.1 or § 2N2.1. USSG app. a. The smuggling guideline, however, provided a greater base offense level, and the guidelines direct the sentencing court to use the provision that results in the greater offense level "[w]here two or more guideline provisions

■ Under USSG § 2T3.1, the base offense level is determined by calculating the amount of the tax loss, and then referring to the Tax Table in § 2T4.1. The district court calculated the tax loss to be approximately $106,000, resulting in a base offense level of 14. Montano contests this amount, arguing that he was responsible for only $40,000 in tax loss.

The district court calculated the loss by beginning with the amount of money withdrawn from the Salazars' bank account from March 1998 to March 1999 to buy pharmaceuticals, $142,000. The court accepted the government's evidence that the pharmaceuticals double in value when brought into the United States, resulting in an increase in market value of $142,000, which is an alternative measure of the duty evaded.[5] USSG § 2T3.1, comment. (n.2). The court then deducted an $8,000 loan from Montano to the Salazars and a 20 percent profit for the Salazars, resulting in a tax loss of approximately $106,000, and a base offense level of 14 under § 2T4.1. Montano contends that the government failed to establish that the entire amount of $142,000 withdrawn from the Salazars' account to buy drugs was from him. He argues that he deposited only $40,000 into the account, and suggests that the rest of the money was deposited by other people for whom the Salazars smuggled merchandise.

■ The government bears the burden of establishing the base offense level, and, hence, here, the amount of tax loss, by a preponderance of the evidence. *United States v. Howard,* 894 F.2d 1085, 1090 (9th Cir.1990). Under the preponderance of the evidence standard, "the relevant facts must be shown to be more likely true than not." *United States v. Lawrence,* 189 F.3d 838, 844 (9th Cir. 1999); *United States v. Collins,* 109 F.3d 1413, 1420 (9th Cir.1997).

The government's primary evidence before the district court that the entire $142,000 withdrawn from the Salazars' account to buy pharmaceuticals was attributable to Montano was a chart that correlates the dates of deposits into and withdrawals from the Salazars' account with dates of telephone calls from Montano to the Salazars. The government points out that Montano's modus operandi was to call the Salazars to notify them of a deposit, that many of the deposits and withdrawals were preceded by a phone call from Montano to the Salazars, and that many of the deposits were made at bank branches close to Montano's store. The government also relies on the Salazars' testimony that any deposits into their account over $300 were from Montano, and that their smuggling transactions for people other than Montano did not involve deposits into their account. Based on this evidence, the government submits that all of the deposits, and, accordingly, the withdrawals, were attributable to the Salazars' smuggling work for Montano. Montano argues that all the

appear equally applicable, but the guidelines authorize the application of only one such provision." USSG § 1B1.1, comment. (n.5). The district court's reliance on the guideline providing the greater offense level therefore was proper. *See United States v. Cooper,* 966 F.2d 936, 940–42 (5th Cir.1992).

5. The guidelines commentary provides for several alternative measures of the duty evad-

ed. As the government explained at the sentencing hearing, the severity of the offense generally is based on the amount of customs duty lost. If, however, the items being smuggled are prohibited items, they could not have been brought in at all; thus, there is no duty on them, and so the commentary suggests alternative measures of the duty evaded. USSG § 2T3.1, comment. (n.2).

deposits were not made by him, pointing to evidence such as the Salazars' testimony that they smuggled for other people, and a deposit into the Salazars' account made in Oakland, California, that Montano could not have made.

We recognize that there are discrepancies between the government's chart and its description of Montano's modus operandi; that is, there are deposits into and withdrawals from the Salazars' account without any corresponding telephone call from Montano. The district court noted these discrepancies. In calculating the tax loss, however, the court credited the Salazars' testimony that all deposits over $300 were made by Montano, and the court even deducted the deposit in Oakland, as well as the loan Montano made to the Salazars. The Salazars' testimony is the only evidence of the source of the deposits into their account. Based on their testimony, the district court's reliance on the government's chart in calculating the amount of loss was not clearly erroneous. *See United States v. Murdoch*, 98 F.3d 472, 475 (9th Cir.1996) (noting that review for clear error is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed" (internal quotations omitted)). We conclude that the calculation was not clearly erroneous and accordingly affirm the district court's determination of Montano's base offense level.

## II. Sophisticated Concealment

■ USSG § 2T3.1(b)(1) provides for a two-level increase if the smuggling involved sophisticated concealment. The district court found that the enhancement applied, stating that "there was a sophisticated method that the defendant used in getting the drugs across by using the Salazars, by using their bank accounts, by using their business, and sometimes even doing it himself." We disagree and reverse the application of the enhancement.

The commentary to § 2T3.1 defines sophisticated concealment as "especially complex or especially intricate offense conduct in which deliberate steps are taken to make the offense, or its extent, difficult to detect. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts ordinarily indicates sophisticated concealment." USSG § 2T3.1, comment. (n.3).

Cases that have found that a defendant employed sophisticated means to conceal the offense involve more complex schemes than that found here.[6] *See, e.g., United States v. Kontny*, 238 F.3d 815, 820 (7th Cir.2001) (for 10 years, defendants issued separate checks to their 25 employees, programmed their computer, and issued false check stubs to their accountant in order to hide evasion of payroll taxes); *Aragbaye*, 234 F.3d at 1108 (defendant owned tax preparation businesses, prepared W–2 forms for fictitious employees,

---

**6.** There is almost no case law applying the sophisticated concealment enhancement found in § 2T3.1(b)(1). Most cases discussing sophisticated concealment deal with the sophisticated concealment enhancements found in the tax fraud or tax evasion guidelines, rather than the smuggling guideline. *See, e.g., United States v. Kontny*, 238 F.3d 815, 820–22 (7th Cir.2001) (discussing § 2T1.4(b)(2), tax fraud); *Aragbaye*, 234 F.3d at 1107–08 (same); *United States v. Friend*, 104 F.3d 127, 129–30 (7th Cir.1997) (same);

*Ford*, 989 F.2d at 351 (construing § 2T1.3(b)(2), Fraud and False Statements, consolidated in 1993 with § 2T1.1, Tax Evasion). The language in § 2T3.1(b)(1), however, is nearly identical to that in the tax fraud guidelines, and the examples given in the commentary, "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts," are the same. USSG § 2T1.1, comment. (n.4); § 2T3.1, comment. (n.3).

used a false name and social security number to apply for an identification number with the IRS, and used names and social security numbers of unknowing indigents and children to file fraudulent tax returns); *United States v. Lewis*, 93 F.3d 1075, 1082 (2d Cir.1996) (defendant wrote 200 checks to non-existent businesses and charities, deposited them into 26 different bank accounts, and transferred the money into other accounts).

The enhancement in Montano's case, by contrast, was applied because he smuggled merchandise by depositing money into the Salazars' account, having them smuggle the goods across the border, and then receiving the merchandise in the United States. The government argues that this conduct is more sophisticated than "cases involving tourists who bring in items for their own use." USSG § 2T3.1, comment. (n.1). That distinction, however, is accounted for by the guidelines, which recommend a sentence near the minimum of the guideline range for such tourists. *Id.*

Here, Montano's activities represent a crude and very basic smuggling operation. Webster's dictionary defines "sophisticated" as "deprived of native or original simplicity: as (a) highly complicated: many sided: COMPLEX." Webster's Third New Int'l Dictionary at 2174 (1993). This scheme was neither many sided nor complex. Furthermore, Montano's concealment activities were all inherent in the activity of smuggling. Smuggling, by its nature, involves active steps to avoid detection. Therefore, applying the sophisticated concealment enhancement to a smuggling charge requires the conceptually difficult task of separating out those concealment activities that represent more "sophisticated" concealment.

The factors the district court relied on are common, not especially sophisticated, and were employed, not to conceal, but simply to carry out the smuggling scheme. The bank account deposits in the Los Angeles area were used simply to avoid Montano having to travel to San Diego to hand the money to the Salazars and because it was simpler and more trustworthy than mailing the sums to them. In fact, as it turned out, using bank deposits, which could be traced, instead of the direct, hand-to-hand payment of cash, did not further concealment of the scheme, but enabled it to be detected and its scope documented. Use of couriers, or mules, in smuggling is quite common.[7] The Salazars themselves admitted that they were mules for several other smugglers. The only factor involved that could be classed as a concealment effort is the use of cash, but virtually all smugglers use cash. It is neither unusual nor particularly sophisticated. In short, there is no evidence that Montano's conduct involved the "presence of efforts at concealment that go beyond ... the concealment inherent in [smuggling]." *Kontny*, 238 F.3d at 821. We conclude that the application of the sophisticated concealment enhancement was clearly erroneous and is therefore reversed.

### III. Role in the Offense

██ The district court's application of the two-level enhancement pursuant to USSG § 3B1.1(c), for Montano's role in the offense as a leader, manager, or supervisor, was not clearly erroneous. Even if, as Montano argues, the Salazars were "independent contractors, smugglers-for-hire, with Mr. Montano being only one of their many customers," there is no doubt that

---

7. This is also a factor in the role in the offense enhancement, discussed in Part III, *infra.*

Montano told the Salazars when to make a crossing, what pharmaceuticals to purchase, and where to deliver them. "An enhancement may be proper where, as here, a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants. The enhancement reflects the greater level of culpability of the participant who arranges the transaction." *United States v. Varela,* 993 F.2d 686, 691–92 (9th Cir.1993); *see also United States v. Camper,* 66 F.3d 229, 231 (9th Cir.1995) (quoting *Varela*). The district court therefore did not clearly err in applying the two-level increase for Montano's role in the offense.[8]

## CONCLUSION

The district court did not err in calculating Montano's base offense level, or in applying the enhancement for his role in the offense; however, we reverse the sophisticated concealment enhancement. We vacate the sentence and remand for resentencing consistent with this opinion.

**AFFIRMED in part, REVERSED and REMANDED in part.**

---

8. Because we reverse the application of the sophisticated concealment enhancement, we do not address Montano's argument that the application of both the sophisticated conceal- ment enhancement and the role in the offense enhancement constituted impermissible double counting.