24-1341-cr
*United States v. Moses*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of January, two thousand twenty-six.

Present:

> AMALYA L. KEARSE,
> JOHN M. WALKER, JR.,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

———————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                    24-1341-cr

SOMORIE MOSES, AKA SUGAR BEAR,
AKA SOMORIE BARFIELD, AKA BEAR,
AKA DADDY

*Defendant-Appellant*.

———————————————————————

| | |
|---|---|
| For Appellee: | JONATHAN SIEGEL (Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Brooklyn, NY |
| For Defendant-Appellant: | MICHAEL K. BACHRACH, Law Office of Michael K. Bachrach, New York, NY; Michael O. Hueston, Michael Hueston, Brooklyn, NY |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Carol B. Amon, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Somorie Moses appeals from a judgment of the United States District Court for the Eastern District of New York entered on May 10, 2024, following a guilty plea.

Moses was a pimp who sex trafficked both adults and minors, including a woman named Leondra Foster. On the night of January 12, 2017, and into the early morning hours thereafter, Moses and Foster had a heated argument, culminating in Moses assaulting Foster. The seriousness of the injuries Foster suffered at the hands of Moses is disputed, as are the events that transpired after the assault. What is not disputed is that Foster died in the hours immediately following the assault. Moses dismembered and disposed of most of Foster's body, but kept in his freezer her head, hands, and feet—including one foot with his name tattooed on it. Shortly after Foster's death, authorities located part of her corpse and traced it back to Moses. After a jury trial in New York state trial court, Moses was convicted of criminally negligent homicide and concealment of a human corpse, and he was sentenced to 2 to 4 years of imprisonment on each count, to run concurrently.

While serving his state sentence, federal authorities obtained additional evidence of Moses's guilt, including statements he had made to witnesses admitting that he killed Foster because he believed that she had given him HIV. On September 15, 2023, Moses pled guilty to all ten counts in a new federal indictment, including nine counts of sex trafficking different victims (including Foster) in violation of 18 U.S.C. § 1591(a)(1), and one count of murdering Foster in the

course of sex trafficking in violation of 18 U.S.C. § 2245.  The district court sentenced Moses to concurrent terms of life imprisonment on all ten counts.

On appeal, Moses raises three arguments: (1) that his guilty plea to Count Ten (the murder of Leondra Foster) was not entered knowingly and voluntarily; (2) that the record at the time of his guilty plea was insufficient to support the district court's determination that there was a sufficient factual basis to support his plea to Count Ten; and (3) that his sentence was procedurally unreasonable because the district court used the wrong provision of the Sentencing Guidelines to calculate his base offense level.  We assume the parties' familiarity with the case.

## I.        The Validity of Moses's Guilty Plea

Under Federal Rule of Criminal Procedure 11, a guilty plea must be made knowingly and voluntarily, and there must be a factual basis for the plea.  Fed. R. Crim. P. 11(b).  Rule 11 also provides that any "variance from the[se] requirements . . . is harmless error if it does not affect substantial rights."  Fed. R. Crim. P. 11(h).  Moreover, because Moses did not raise any concerns regarding his guilty plea before the district court, we review his challenges to the plea only for plain error.  *See United States v. Robinson*, 799 F.3d 196, 200 (2d Cir. 2015).[1]

### A.  Knowing and Voluntary

Rule 11(b)(1)(G) requires the district court to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading."  Moses first asserts that his guilty plea was not made knowingly or voluntarily because the district court did not properly explain the elements of murder in the course of sex trafficking, pursuant to 18

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

U.S.C. § 2245. We disagree, based on both his and his counsel's statements at the change of plea hearing.

Rule 11 "does not tell [district courts] precisely how to perform this important task [of informing a defendant of the elements of the charged offense] in the great variety of cases that come before them." *United States v. Maher*, 108 F.3d 1513, 1520-21 (2d Cir. 1997). As the Supreme Court has said, "we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The district court is permitted to rely on competent counsel's assurances that "the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Id.*

The record clearly supports the conclusion that the district court did not commit any error, plain or otherwise, in finding that Moses was acting knowingly and voluntarily, with a full understanding of the elements of Count Ten, when he pleaded guilty. Moses confirmed that he read the indictment, which included all of the elements of 18 U.S.C. § 2245. He also confirmed that his attorneys had explained all of the elements of the crime to him. Moses's defense counsel corroborated this. The court then proceeded to go through all the elements of 18 U.S.C. § 2245 on the record. The court stated: "Now, there is a tenth count. And this is a violation of 18 U.S.C. Section 2245. That count charges murder. They would have to prove that you murdered the individual that is listed in that count," and "murder is defined in the statute as the unlawful killing of a human being with malice aforethought." App'x at 296-97. Defense counsel responded that "the parties agree that an unintentional murder would also qualify as murder under the statute, as

4

long as it's committed with reckless disregard for human life." *Id.* at 297. After this exchange between the court and his counsel, Moses again confirmed that he understood the elements of § 2245 as they had just been explained. Not only did both Moses and his counsel confirm that he had been properly informed of the nature and elements of murder in the course of sex trafficking multiple times, but the court also explicitly listed the elements of the offense on the record. This was more than a sufficient basis to find that Moses's plea was knowing and voluntary in the sense that he understood the nature of the crime with which he was charged, including its essential elements.

Nevertheless, Moses contends that his guilty plea was not made knowingly or voluntarily because the district court did not canvas him about a possible heat of passion defense at his change of plea hearing. However, this Court has repeatedly held that a district court "has no duty under Rule 11[] to anticipate or detect, and then rule out, defenses . . . ." *United States v. Smith*, 160 F.3d 117, 123 (2d Cir. 1998). In other words, a guilty plea is not invalid simply because a district court does not "provide the defendant and his counsel with a tutorial on every conceivable defense and then secure a waiver for each one." *Id.* at 123 n.4. Further, even if, hypothetically, the court's failure to raise such a defense with Moses at the plea hearing were deemed to constitute an error, Moses would have needed to show, in order to qualify for relief under the third prong of plain-error analysis, that the error affected his substantial rights; more specifically, he would have to demonstrate there was "a reasonable probability that, but for the error, he would not have entered the plea" of guilty, *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Any such probability, however, is belied by Moses's sentencing memorandum, in which he explicitly stated that in order to obtain the sentencing benefits of accepting responsibility, he would not pursue any argument or defense that the facts of his case would support a charge of voluntary manslaughter

5

instead of murder. *See* Dist. Ct. Dkt. No. 115, at 32 n.18 ("Because . . . Somorie Moses decided to accept full responsibility and plead guilty to the Indictment, this Court need not determine whether such a defense applies . . . .").

**B. Sufficient Factual Basis**

Moses's next challenge is to the district court's determination that there was a sufficient factual basis for his guilty plea. Specifically, Moses contends that the record before the district court at the time of his guilty plea did not support the conclusion that he had acted with malice aforethought. Instead, he argues, the record shows at most that he acted "upon a sudden quarrel or heat of passion," making his crime more comparable to voluntary manslaughter than first- or second-degree murder. Appellant's Br. 28. In response, the Government states that Moses has waived this argument, or in the alternative, fails to establish plain error.

When a defendant "as a tactical matter" chooses not to raise an objection to a purported error, "such inaction constitutes a true waiver which will negate even plain error review." *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007). A true waiver "applies with even more force when . . . defendants not only failed to object to what they now describe as error," but also "actively solicited it" to obtain some benefit. *Id.* This "doctrine seeks to avoid rewarding mistakes stemming from a defendant's own intelligent, deliberate course of conduct in pursuing his defense." *United States v. Bastian*, 770 F.3d 212, 218 (2d Cir. 2014).

Based on Moses's representations at the change of plea hearing, we conclude that Moses waived any challenge to the adequacy of the factual basis supporting his guilty plea. At the outset of the plea hearing, defense counsel explained to the court that "[t]he parties have worked together, with Mr. Moses's input, on an allocution that we both believe satisfies all of the elements of the offenses . . . ." App'x at 276-77. As the hearing proceeded, defense counsel represented that the

6

defendant's guilty plea would "be waiving factual disputes as to his guilt." *Id.* at 277. And as the parties discussed the elements of the offenses with the district court, defense counsel reiterated the point: "Your Honor, I don't know if it would be helpful. It is complicated, these particular statutes. As I stated, we have drafted an allocution together." *Id.* at 283. When the court inquired whether defense counsel "had gone over this allocution with Mr. Moses and every fact in that allocution he says is true," counsel responded, "Yes, Your Honor." *Id.* at 284. Counsel emphasized that the allocution had been crafted "with Mr. Moses's input," and that "[w]e have explained it all to him in great detail." *Id.* When the district court expressed concern as to whether it might need to ask the defendant supplemental questions to clarify the factual basis for the plea, defense counsel assured the court that an allocution that simply tracked the statutory language of the offense would be adequate under this Court's case law. *Id.* at 290-91.

After the court received both parties' assurances that the jointly crafted allocution would provide a sufficient factual basis for Moses's guilty plea, Moses acknowledged as follows with respect to Count Ten: "[D]uring and as a consequence of my commission of the sex trafficking offense in Count Nine, I intentionally inflicted serious physical injury on Leondra Foster which proximately caused her death. In doing so, I acted unlawfully and recklessly with extreme indifference to her life." *Id.* at 330. By offering the shortest allocution possible, and assuring the district court of its adequacy, Moses made a tactical choice that would leave himself room at sentencing to minimize his culpability with respect to Foster's murder—to suggest, for example, that her death ultimately occurred because she slipped in the bathroom after Moses beat her, not because the blunt-force trauma of his blows directly killed her. Moses's strategy did not succeed, and the district court imposed concurrent life sentences on all ten counts. But as we have previously held, when a defendant "is attempting to evade the consequences of an unsuccessful

7

tactical decision . . . we have no difficulty concluding that [he] has waived appellate review." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). Accordingly, we hold that Moses waived any challenge to the adequacy of the factual basis of his plea.

## II.    Procedural Reasonableness of Moses's Sentence

Moses's final argument is that the district court erred when it calculated his advisory Sentencing Guidelines range. The district court set Moses's base offense level by reference to the first-degree murder guideline in U.S.S.G. § 2A1.1, which is cross-referenced for convictions under 18 U.S.C. § 2245 in the Statutory Index in Appendix A to the Guidelines Manual. According to Moses, the district court should have treated the Statutory Index cross-reference to § 2A1.1 as merely advisory, and instead applied the lower base offense level provided by the second-degree murder guideline in U.S.S.G. § 2A1.2, which he argues more closely fits his offense conduct. In support of his argument that the Statutory Index is merely advisory, Moses directs our attention to cases such as *United States v. Aragbaye*, 234 F.3d 1101, 1104 (9th Cir. 2000). But *Aragbaye* relied on a version of the Guidelines Manual that has since been superseded. *See* U.S.S.G. § 1B1.2 cmt. 1 (1997) ("When a particular statute proscribes a variety of conduct that might constitute the subject of different offense guidelines, the court will determine which guideline section applies based upon the nature of the offense conduct charged in the count of which the defendant was convicted."). Guideline Amendment 591, adopted in 2000, made the Statutory Index mandatory, and required sentencing courts to "apply the offense guideline referenced in the Statutory Index . . . for the statute of conviction." *United States v. Rivera*, 293 F.3d 584, 585 (2d Cir. 2002). Thereafter, the Supreme Court ruled that the Guidelines themselves are not mandatory. *See United States v. Booker*, 543 U.S. 220, 264 (2005). However, the district court is required to "begin all sentencing proceedings by *correctly* calculating the applicable

[advisory] Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) (emphasis added). Here, the Statutory Index requires courts to apply U.S.S.G. § 2A1.1, the first-degree murder guideline, for convictions under 18 U.S.C. § 2245. The district court therefore did not err in applying that guideline when setting Moses's base offense level.

In any event, even if there had been any error, it would have been harmless. The sentencing judge explicitly stated that regardless of what Moses's guideline range was, it would not "affect the sentence that the Court intends to impose because [it] intend[ed] to impose under all of the facts and circumstances of this case a lifetime sentence." App'x at 440. As we have previously held, "[a] procedural sentencing error is harmless if the record indicates clearly that the district court would have imposed the same sentence in any event." *United States v. Runner,* 143 F.4th 146, 162 (2d Cir. 2025).

\* \* \*

We have considered Moses's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

9