FILED



FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 17 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br> v.<br><br>JOHN DOE,<br><br>    Defendant - Appellant. | No. 13-10385<br><br>D.C. No. 1:08-cr-00254-LJO-1<br>Eastern District of California,<br>Fresno<br><br><br>ORDER |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted September 10, 2014
San Francisco, California

Before: BEA, IKUTA, and HURWITZ, Circuit Judges.


   The opinion filed February 17, 2015 is hereby withdrawn. An opinion will

be filed in its place.

Counsel Page

Carolyn Wiggin (argued), Assistant Federal Defender; Heather E. Williams, Federal Defender, Sacramento, California, for Defendant-Appellant.

Kathleen Servatius (argued), Assistant United States Attorney; Benjamin B. Wagner, United States Attorney; Camil A. Skipper, Appellate Chief, Fresno, California, for Plaintiff-Appellee.

FILED

FEB 17 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10385 |
| Plaintiff - Appellee, | D.C. No. 1:08-cr-00254-LJO-1 |
| v. | |
| JOHN DOE, | OPINION |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted September 10, 2014
San Francisco, California

Before: BEA, IKUTA, and HURWITZ, Circuit Judges.

Opinion by Judge IKUTA, Circuit Judge:

Defendant John Doe[1] challenges several rulings of the district court, made

following our remand of his previous appeal. We hold that the district court did

---

[1]  We grant the defendant's unopposed motion for use of a pseudonym in this opinion because this is an "unusual case" where the defendant may face "a risk of serious bodily harm if his role on behalf of the Government were disclosed to other inmates." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980).

not clearly err in determining that Doe was an "organizer" for purposes of § 3B1.1(c) of the Sentencing Guidelines, where his role was "coordinating the activities of the other participants to the extent necessary to complete the transaction." *See United States v. Varela*, 993 F.2d 686, 692 (9th Cir. 1993). We also hold that the imposition of the § 3B1.1(c) enhancement made Doe ineligible for the "safety valve" reduction, 18 U.S.C. § 3553(f)(4), and affirm the district court's other rulings.

I

We recounted the factual and procedural history of this case in our prior opinion, *United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013), and so provide only the information necessary for our decision here. We include the additional facts the district court found when it resolved the parties' sentencing-related factual disputes as required by *Doe*. *See id.* at 1156.

In early 2008, before engaging in the criminal activities for which he was convicted, Doe contacted the Federal Bureau of Investigation (FBI), and asked if he could provide information about illegal drug activities in exchange for immigration assistance for his family. *Id.* at 1140. At a meeting with an agent, Doe provided the names and phone numbers of individuals involved in drug trafficking. *Id.* "The agent explained that Doe was 'putting the cart before the

horse,' and while such requests were sometimes granted, this occurred only after long and successful records of cooperation with the FBI that resulted in prosecutions and convictions." *Id.* Doe repeated his request for immigration assistance at a second meeting with an FBI agent, but the agent told Doe that he had not yet provided the kinds of specific information that could eventually make him eligible for such assistance. "At no point did the agent authorize Doe to engage in illegal activity either on his own behalf or on the FBI's behalf." *Id.*

Shortly after these contacts, Doe participated in one unsuccessful and two completed drug transactions. Two confidential informants (Joe Reyna, nicknamed "Gordo," and Juan Duran, nicknamed "Pelón") and one undercover police detective (Detective Valdes of the Fresno Police Department) posed as the three buyers in each transaction.

Gordo obtained Doe's contact information from the subject of a different police investigation. When Gordo first called Doe, Doe confirmed that he would be able to make the arrangements to secure cocaine for Gordo and his co-buyers. He told Gordo to meet him in Los Angeles to become better acquainted and further discuss the transaction. A few days later, Gordo and Pelón drove to Los Angeles and attended a meeting with Doe. During the meeting, the buyers told Doe their specifications regarding the quantity and type of drugs they wanted to purchase (20

-3-

kilograms of cocaine), and Doe gave them the pricing information ($19,000 per kilogram). Doe confirmed that he had the contacts necessary for obtaining that quantity of cocaine. Doe then took Gordo and Pelón to another location to sample the type of cocaine that would be available for purchase. The two purported buyers then took the sample back to Detective Valdes.

Shortly thereafter, Doe informed Gordo that a trustworthy supplier now had cocaine available in Los Angeles. Gordo, Pelón, and Detective Valdes arrived in Los Angeles and met with Doe. Notwithstanding Doe's assurances, and repeated calls to hurry the suppliers, the cocaine did not arrive. The buyers left empty handed.

Doe contacted Gordo a few days later with the information that although cocaine was not immediately available, Doe could supply methamphetamine if Gordo and his co-buyers were interested. Gordo agreed to purchase 12 pounds of methamphetamine. Doe gave him the price, $17,900 per pound, as well as the contact information for Jesus Fletes, who was the contact person taking delivery of the methamphetamine. Gordo and Pelón met with Fletes to arrange logistical details. After this meeting, Gordo called Doe to express his doubts about Fletes, but Doe assured him that Fletes could deliver the methamphetamine.

-4-

Gordo and Pelón then went to Fletes's establishment to consummate the transaction, which took place under law enforcement surveillance. Although Doe did not accompany them, he communicated with Gordo frequently during the transaction. After Fletes showed Gordo and Pelón the methamphetamine, law enforcement personnel arrested Fletes. Doe called Fletes shortly after Fletes's arrest to confirm the deal had succeeded, and Fletes, now cooperating with the police, assured him it had. A few days later, Fletes called Doe and the two discussed how they would divide the profits.

Following this transaction, Doe told Gordo that the 20 kilograms of cocaine he had requested was available, and Doe could sell it to Gordo and his cohorts in two 10 kilogram transactions. Doe asked Gordo and his co-buyers to come to Los Angeles for the sale. Two other individuals involved in drug trafficking, Hector Rodriguez and Jorge Bautista, were responsible for bringing the cocaine to the location where the deal would be completed. On the day of the sale, Doe kept in constant contact with Rodriguez and Bautista. He also spoke to Detective Valdes, who was still undercover as a buyer. Valdez suggested that Doe place the drugs in a car, which Doe could then exchange for a second car in which Valdes would place the money. Later in the day, Doe met with Detective Valdes, Gordo, and Pelón to verify that they had placed sufficient funds to purchase the cocaine in their

vehicle.  Doe and Pelón then drove to meet Rodriguez and Bautista, while Gordo

remained with Detective Valdes.  Once Pelón confirmed that the cocaine was at the

appointed location, law enforcement officials arrested Doe, Bautista, and

Rodriguez.  Doe immediately told Detective Valdes he was an informant working

with the FBI.  *Doe*, 705 F.3d at 1141.  But when Detective Valdes asked him if he

was working with the FBI on this specific case, Doe said "no."  *Id.*

Doe was indicted on August 7, 2008 for aiding and abetting each of the

following offenses: conspiracy to distribute methamphetamine, conspiracy to

distribute cocaine, possession of methamphetamine with intent to distribute, and

possession of cocaine with intent to distribute.  At trial, Doe relied on a "public

authority defense," namely, that he had engaged in the criminal acts with the

approval of the FBI for the purpose of providing the FBI with information

regarding criminal activities.  *Id.*  After a four-day trial and jury deliberations, the

jury returned guilty verdicts on all counts.  *Id.* at 1141–42.

In his first appeal, Doe raised two claims relevant here.  *See Doe*, 705 F.3d

at 1149–57.  First, he argued that the district court had erred in denying two of his

discovery requests.  *Id.* at 1150.  Doe requested:

> 5. Any and all records or reports which document any and all
> telephone numbers, license plate numbers, or individuals, provided or

identified by [Doe] to FBI [agents,] as being associated, involved, or related to criminal activity; ["Request Five"]

6. Any and all records, reports or calendars which document the date of any meeting or communication, or planned meeting or communication between [Doe] and FBI [agents]; ["Request Six"]

*Id.* at 1141 (alterations in original). Before trial, the district court rejected Doe's requests on the ground that they were so overbroad that it was not possible to determine how the information sought was material to preparing a defense. *Id* at 1150 (citing Fed. R. Crim. P. 16(a)(1)(E)(i)). Doe explained that he sought this information to support his public authority defense, which was based on evidence that he met with FBI agents twice prior to his arrest, and provided them with at least one name and telephone number that he claimed related to a drug trafficker. *Id.* at 1140, 1150–51.

Doe also claimed that the government violated its obligation to disclose material exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide the information identified in the discovery requests. *Doe*, 705 F.3d at 1152.

*Doe* held that the district court abused its discretion in denying the requests, which we deemed to be narrow and pointed. *Id.* at 1150–51. We stated that the requests were "well tailored" in that they explained the specific information sought

and identified the types of documents likely to contain that information. *Id.* at 1150. We also held that the requests related to a specific time frame: the periods during which the FBI met with or spoke to Doe. *Id.* We therefore vacated Doe's conviction and remanded to the district court to address the discovery and *Brady* issues. *Id.* at 1151–52. We directed the district court to grant Doe's motion for a new trial if the government's responsive documents contained information that might have altered the verdict. *Id.* at 1152–53. If the new information would not have had such an effect, the district court was to reinstate the conviction. *Id.*

Second, Doe claimed that the district court made a number of procedural errors at sentencing. Among other things, the court failed to address Doe's argument that he was not an "organizer" for purposes of § 3B1.1(c), *id.* at 1143, which requires the imposition of a two-point sentence enhancement for a defendant who "was an organizer, leader, manager, or supervisor" in a specified criminal activity, U.S.S.G. § 3B1.1(c). We agreed, and rejected the government's argument that the district court had implicitly rejected Doe's objection. *Doe*, 705 F.3d at 1155. First, we held that an "implicit ruling was insufficient to comply with this court's interpretation of Rule 32" of the Federal Rules of Criminal Procedure, *id.* at 1154–55; rather, a court must explicitly resolve objections and factual disputes relating to sentencing enhancements, *id* at 1155. Moreover, we stated that the

inadequacy of an implicit ruling in this case "is even more pronounced due to the weak support for any implicit findings the court may have made," and ruled that "[i]f this enhancement is to be imposed, the judge must make more explicit findings" on remand to resolve the factual disputes. *Id.* at 1156; *see also id.* at 1155 n.12. After finding in Doe's favor on his other claims of procedural error, we vacated the sentence and remanded for further proceedings. *Id.* at 1156–57.

On remand, the government responded to the discovery requests by submitting additional declarations of two FBI agents who met with Doe. One agent's declaration stated he had met Doe only once, and attached a calendar entry and an email referring to an April 15 meeting with Doe. The other agent's declaration stated that he "conducted a global search of the electronic records database" of the FBI, that the FBI database "contains all reports that would be responsive" to the requests, and that the search performed "encompassed the requested information." Based on this search, the second agent stated that the government had already given Doe all responsive documents, including his notes of and report on his meetings with Doe. The district court rejected Doe's argument that the government should have searched additional databases to see if they contained any references, during any time period, to the same phone numbers, license plate numbers, or names Doe had given the government. It concluded that

all information responsive to the discovery requests had been produced.  Because nothing in the response to the discovery requests would have affected the jury's verdict, the district court reinstated the conviction.

At Doe's re-sentencing, the district court imposed a two-level enhancement under § 3B1.1(c) for being an organizer.  The district court responded to *Doe*'s mandate that it resolve the objections and factual disputes affecting the organizer enhancement; it heard the parties' arguments and then verified and incorporated as part of its factual findings a portion of the fact section of the government's sentencing memorandum.  In addition, the district court made a number of findings supporting its determination that Doe was the "nexus" who "connected all the participants together."  The district court noted that Doe not only introduced the parties, but also "actively participated at many levels, doing many other things."  Doe "participated in specific and repetitive arrangements for distribution of methamphetamine and cocaine in some course at some level" and "directly or indirectly, negotiated the price of the methamphetamine."  Based on these findings, the district court concluded that Doe qualified as an "organizer" and overruled his objection to the imposition of the organizer enhancement.  The district court also ruled that Doe did not merit a safety valve reduction and denied a reduction for acceptance of responsibility.

## II

In this second appeal, Doe claims the district court erred in concluding that one of the two discovery requests, Request Five, was satisfied by the documents the government produced. He also claims that the district court made two erroneous decisions under the Sentencing Guidelines by imposing the § 3B1.1(c) enhancement for being an organizer and by denying him a sentence reduction for acceptance of responsibility under § 3E1.1. Finally, he claims that the district court erred by denying him a reduction under the safety valve provision, pursuant to 18 U.S.C. § 3553(f)(4).

We review discovery orders for an abuse of discretion. *Doe*, 705 F.3d at 1149–50. We first determine "whether the district court identified the correct legal standard" and then "determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). We review alleged *Brady* violations de novo. *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010).

We review the district court's interpretation of the Sentencing Guidelines de novo, *United States v. Swank*, 676 F.3d 919, 921 (9th Cir. 2012), and review its

factual findings in sentencing for clear error, *United States v. Bonilla-Guizar*, 729

F.3d 1179, 1186 (9th Cir. 2013) (citing *United States v. Kimbrew*, 406 F.3d 1149,

1151 (9th Cir. 2005)).  The district court's determination that a defendant is an

"organizer" for purposes of the § 3B1.1(c) enhancement is a question of fact

reviewed for clear error.  *United States v. Lopez-Sandoval*, 146 F.3d 712, 716 (9th

Cir. 1998).  "A district court's decision about whether a defendant has accepted

responsibility is a factual determination reviewed for clear error."  *United States v.*

*Rosas*, 615 F.3d 1058, 1066 (9th Cir. 2010) (quoting *United States v. Cantrell*, 433

F.3d 1269, 1284 (9th Cir.2006)).[2]  We consider each of Doe's claims in turn.

A

We first consider Doe's claim that the district court abused its discretion in

holding that the government's disclosures satisfied Request Five.  Doe argues that

the language of Request Five, asking for "[a]ny and all records or reports which

document any and all telephone numbers, license plates numbers, or individuals,

---

[2] The government notes our intracircuit split on whether we review a district court's application of the Sentencing Guidelines to the facts de novo or for an abuse of discretion.  *See Swank*, 676 F.3d at 921.  We need not reach this issue, however.  Doe raises only two Sentencing Guidelines issues: the district court's determination that he is an "organizer" for purposes of the § 3B1.1(c) enhancement, and its holding that he did not accept responsibility for purposes of § 3E1.1.  Our cases consistently apply the clear error standard of review to each of these objections.

-12-

provided or identified" by Doe to the government, broadly requests all records in the government's possession that mention those telephone numbers, license plate numbers, or names of individuals, regardless whether the records are related to Doe's interaction with the FBI. Doe argues that if he could prove he provided information that relates to actual criminals, it would demonstrate that he genuinely intended to help the FBI.

The district court's holding is consistent with the most natural reading of Request Five. Request Five asks for reports regarding Doe's conveyance of specified information to the government, not reports unrelated to Doe's alleged assistance that happen to contain the same information. This natural interpretation of the discovery request is also consistent with our analysis in *Doe*, where we stated that the requests were narrowly tailored and limited to documents created within the time frame during which Doe met with the FBI agents. *Doe*, 705 F.3d at 1150. Under Doe's interpretation, by contrast, the government would have to search for records spanning an indefinite period of time. Because the district court's narrower reading of the requests is not "illogical, implausible, or without support in inferences that may be drawn from facts in the record," *see Hinkson*, 585 F.3d at 1251, the district court did not err in holding there was no discovery violation.

-13-

Doe also argues that because the government did not respond fully to Request Five, it failed to fulfill its *Brady* obligations. Doe has not shown that he has been prejudiced by the government's failure to disclose documents responsive to his broader reading. *See Doe*, 705 F.3d at 1152–53. Even if the government produced documents showing that the telephone numbers, license plates, or names provided by Doe belonged to real criminals, such evidence would not materially bolster Doe's defense that he committed criminal acts as an FBI informant or undermine confidence in the verdict. We therefore also affirm the district court's rejection of Doe's *Brady* claim.

B

We next consider Doe's challenge to the two-level enhancement under § 3B1.1(c).

Chapter 3, Part B of the Sentencing Guidelines "provides adjustments to the offense level based upon the role the defendant played in committing the offense." U.S.S.G. § 3B, introductory cmt. Section 3B1.1 provides for enhancements of a defendant's offense level if the defendant played an aggravating role in the criminal activity. It states, in full:

§3B1.1. Aggravating Role
Based on the defendant's role in the offense, increase the offense level as follows:

(a)    If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b)    If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The plain text of §§ 3B1.1(a) and (b) requires only that the participants be "involved" in the criminal activity the defendant organizes, leads, manages, or supervises. On its face, § 3B1.1(c) does not require even the involvement of a participant. Nevertheless, under our precedent, *see Varela*, 993 F.2d at 692, and the relevant application note, the defendant must have "been the organizer, leader, manager, or supervisor *of one or more other participants*," § 3B1.1, cmt. n.2 (emphasis added). The term "participant" is defined to mean someone "who is criminally responsible for the commission of the offense," which does not include undercover officers or informants. § 3B1.1, cmt. n.1.

In light of this requirement, we have held that in order for a defendant to qualify as an "organizer" for purposes of § 3B1.1(c), there must be "evidence that the defendant [1] exercised some control over others involved in the commission of the offense or [2] was responsible for organizing others for the purpose of carrying out the crime." *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir.

2012) (internal quotation marks omitted). Doe's role is best described by the second prong of this disjunctive test, and we therefore focus on this aspect of the organizer enhancement under § 3B1.1(c).

The Sentencing Guidelines do not define the key term "organizer," so we turn to the dictionary definition. *See United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) (stating that undefined Sentencing Guidelines terms are given their plain meaning, for which we may consult dictionary definitions). The dictionary defines "organizer" as "[a] person who organizes," and defines "organize" as to "make arrangements or preparations for (an event or activity); coordinate" or to "coordinate the activities of (a person or group of people) efficiently: organize and lead a group of people." *New Oxford American Dictionary* 1236 (3rd ed. 2010) (italics omitted). This dictionary definition is consistent with language in the application notes to § 3B1.1, which suggests that a court should consider organizing, planning, and preparation activities, in addition to the degree of authority and control over others. *See* § 3B1.1, cmt. n.4.

Consistent with the plain language of the Sentencing Guidelines, we have held that a defendant who has the "organizational authority," *Lopez-Sandoval*, 146 F.3d at 717, necessary to coordinate the activities of others to achieve a desired result is an "organizer" for purposes of the enhancement under § 3B1.1(c), *see*

*Varela*, 993 F.2d at 692.[3] In *Varela*, we affirmed the district court's ruling that a defendant who "coordinated the procurement and the distribution of drugs from numerous suppliers" qualified for the § 3B1.1(c) enhancement. 993 F.2d at 691. Likewise in *United States v. Avila*, we upheld a district court's finding that the defendant was an organizer where he "coordinated the procurement and the distribution of both cocaine and heroin" and "had numerous sources for his drugs." 905 F.2d 295, 299 (9th Cir. 1990). In sum, the organizer enhancement is appropriately applied to defendants who coordinate drug transactions because "[t]he enhancement reflects the greater level of culpability of the participant who arranges the transaction." *Varela*, 993 F.2d at 691–92; *see also United States v. Montano*, 250 F.3d 709, 716 (9th Cir. 2001).[4]

---

[3] Section 3B1.1(c) applies to an "organizer" of a criminal organization that has less than five participants, whereas § 3B1.1(a) applies to an "organizer" of a criminal activity "that involved five or more participants." The Sentencing Guidelines application notes indicate that the terms "organizer, leader, manager, or supervisor" have different meanings in "relatively small criminal enterprises" than they do in "larger enterprises that tend to have clearly delineated divisions of responsibility." U.S.S.G. § 3B1.1, background cmt. Because we are interpreting the term "organizer" for purposes of a smaller organization described in § 3B1.1(c), we do not address the extent to which our decision may apply to the term "organizer" in § 3B1.1(a).

[4] Doe attempts to distinguish *Avila* and *Varela* on the ground that they were decided before a 1993 amendment to the Sentencing Guidelines application notes, which added the current language requiring evidence that the defendant was "the

(continued...)

An organizer need not also be a supervisor or a superior in a hierarchy of criminal associates. *See* U.S.S.G. § 3B1.1(c); *see also Varela*, 993 F.3d at 691. As we explained in *Varela*, the text of the Sentencing Guidelines requires this conclusion. 993 F.2d at 691. "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous . . . ." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks omitted). Because "[s]ection 3B1.1 allows enhancements for 'organizers' as well as for 'supervisors,' 'leaders,' or 'managers,'" *Varela*, 993 F.3d at 691, requiring an organizer to also be a supervisor would make the term "organizer" superfluous. Thus, the organizer enhancement properly applies to a defendant who "organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants." *Id.*

---

[4](...continued)
organizer, leader, manager, or supervisor of one or more other participants." His argument is based on an erroneous view of our case law prior to that amendment. The 1993 amendment to the application note resolved a circuit split as to whether the § 3B1.1(c) enhancement could apply if a defendant merely organized "property, assets, or activities of a criminal organization," § 3B1.1 cmt. n.2, but did not organize participants. U.S.S.G. app. C, amendment 500. In clarifying that a defendant must organize *participants*, not just property or activities, to be eligible for the § 3B1.1(c) enhancement, the amendment made the Sentencing Guidelines section consistent with our pre-existing decisions. *See Varela*, 993 F.2d at 692; *see also* U.S.S.G., Appendix C, amendment 500. Therefore, our pre-1993 case law, including *Avila* and *Varela*, is consistent with the amendment.

-18-

Applying this interpretation in *Varela*, we confirmed that "[t]he fact that [the defendant] and his suppliers were not in a permanent hierarchical relationship does not preclude our conclusion" that the district court did not clearly err in imposing the organizer enhancement. *Id.* at 691. Similarly, in *Montano* we held that the defendant, who sold Mexican pharmaceuticals his suppliers smuggled into the United States, was eligible for an organizer enhancement even though he had no supervisory relationship with his suppliers, who were "independent contractors, smugglers-for-hire, with [the defendant] being only one of their many customers." 250 F.3d at 711, 715. Applying the enhancement was appropriate because the defendant coordinated the smuggling operation to achieve its objective, telling his suppliers "when to make a crossing, what pharmaceuticals to purchase, and where to deliver them." *Id.* at 716. Accordingly, we conclude that the term "organizer" in § 3B1.1(c) applies to defendants who have the ability and influence necessary to coordinate the activities of others to achieve the desired result, whether or not they have a superior rank in a criminal hierarchy.[5]

---

[5] This conclusion is consistent with the well-reasoned conclusions of the First, Seventh, Eighth, and Tenth Circuits. *See United States v. Carrero-Hernandez*, 643 F.3d 344, 350 (1st Cir. 2011) (observing that a defendant "may be classified as an organizer, though perhaps not as a leader, if he coordinates others so as to facilitate the commission of criminal activity" (internal quotation marks omitted)); *United States v. Brown*, 315 F.3d 929, 932 (8th Cir.

(continued...)

Doe argues that *Bonilla-Guizar* and *Whitney* stand for the principle that the § 3B1.1(c) enhancement requires supervision and some degree of control over others. We disagree. *Bonilla-Guizar* does not address the issue. In *Bonilla-Guizar*, we remanded for clarification of whether the defendant supervised a "participant." 729 F.3d at 1186–87. The district court held that the defendant, a drug "stash house sitter," had supervised "whatever went on in that house," but it was unclear whether the defendant directed the actions of other criminal participants, or only the actions of the hostages kept there. *Id.* Likewise, *Whitney* does not support Doe's argument. In *Whitney*, a defendant participated in a scheme for filing fraudulent tax returns by supplying a co-defendant with tax forms and information on filing false returns, and "filing his own false returns as well as false returns using other inmates' identities." 673 F.3d at 969. We concluded that

---

[5](...continued)
2003) ("[W]e do not require proof of control so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role." (internal quotation marks omitted)); *United States v. Valdez-Arieta*, 127 F.3d 1267, 1271 (10th Cir. 1997) (holding that "devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants" is sufficient to apply the § 3B1.1(c) enhancement); *United States v. Bush*, 79 F.3d 64, 67 (7th Cir. 1996) (stating that although control is a "significant factor, the overall focus of § 3B1.1 is relative responsibility within a criminal organization," so the enhancement applies even absent control if the defendant "played a coordinating or organizing role").

this evidence showed only that the defendant had "facilitated the crime," *id.* at 975–76, which was "insufficient to support a determination that [the defendant] was an organizer or leader warranting a two-level upward adjustment," *id*. at 976. In explaining why a facilitating role was an insufficient basis for imposing the enhancement, we focused on the defendant's failure to exercise "the necessary level of control," *id.* at 975, or have the requisite "supervisory role" in the offense, *id.* at 976. Contrary to Doe's argument, however, we did not hold that an "organizer" must also be a supervisor to qualify for the § 3B1.1(c) enhancement or suggest that a defendant who took a leading role in coordinating a transaction would lack the requisite degree of control. Rather, we correctly explained that "[a] court may impose this enhancement if there is 'evidence that the defendant exercised some control over others involved in the commission of the offense *or* was responsible for organizing others for the purpose of carrying out the crime.'" *Id.* at 975 (quoting *United States v. Ingham*, 486 F.3d 1068, 1074 (9th Cir. 2007)) (emphasis added). Accordingly, *Whitney* is best read as reiterating our long-standing rule that evidence showing that a defendant merely facilitated a criminal activity is insufficient to show that the defendant had the aggravating role required under § 3B1.1(c), whether as an organizer, leader, manager, or supervisor. *See id.* at 975; *see also Lopez-Sandoval*, 146 F.3d at 716–17.

-21-

As indicated in *Whitney* and *Lopez-Sandoval*, we do not apply the enhancement merely because a defendant's "important role" makes him "integral to the success of the criminal enterprise" and gives him a "high degree of culpability." *Whitney*, 673 F.3d at 975; *see also Lopez-Sandoval*, 146 F.3d at 717–718 (holding that the defendant's role as a translator for his co-conspirators, though important, was an insufficient basis for applying the § 3B1.1(c) enhancement). We have also rejected a district court's use of a "but/for test" in this context, and reversed a decision that a defendant qualified for the organizer enhancement because the criminal enterprise could not succeed without him. *See United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir. 1994). Rather, to qualify for the § 3B1.1(c) organizer enhancement, the defendant must have the necessary influence and ability to coordinate the behavior of others so as to achieve the desired criminal result. *See Varela*, 993 F.2d at 691; *Avila*, 905 F.2d at 299; *see also* U.S.S.G. § 3B1.1, cmt. n.2.

We conclude that, in light of the facts and our precedent, the district court did not clearly err in determining that Doe was an "organizer" for purposes of § 3B1.1(c). As required by *Doe*, the district court resolved the objections and factual disputes raised by the parties. Its findings were not clearly erroneous and they support the court's conclusion that Doe's efforts to coordinate "the

-22-

procurement and the distribution of drugs from numerous suppliers," and his role

in "coordinating the activities of the other participants to the extent necessary to

complete the transaction," is sufficient to uphold the organizer enhancement.

*Varela*, 993 F.2d at 691–92. Doe's coordination of the activities of the criminal

participants, namely Fletes, Bautista, and Rodriguez, as well as non-criminal

participants, including Gordo, Pelón, and Detective Valdez, was the driving force

behind the success of two drug transactions and near completion of a third. Doe

put the deal together by negotiating the type, quantity, and price of drugs for each

transaction, and then ensured the drugs, money, and participants arrived when and

where needed. Imposing the organizer enhancement when a defendant has this

level of involvement "reflects the greater culpability of the participant who

arranges the transaction." *Varela*, 993 F.2d at 691–92; *see also Montano*, 250 F.3d

at 716.

As an organizer, Doe is ineligible for safety valve relief, pursuant to 18

U.S.C. § 3553(f)(4). We therefore also affirm the district court's denial of relief

under the safety valve.

C

Finally, we turn to Doe's claim that the district court erred in denying him a

two-level offense reduction for acceptance of responsibility. A defendant may

receive at two-level offense reduction if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse," U.S.S.G. § 3E1.1 cmt. n.2, though going to trial does not necessarily preclude the adjustment if the defendant asserts an incomplete, rather than complete, defense at trial, *see United States v. Burrows*, 36 F.3d 875, 883 (9th Cir. 1994). The district court's decision on this point is entitled to "great deference" because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.5. The decision is "not to be disturbed 'unless it is *without foundation.'"* *United States v. Innie*, 7 F.3d 840, 848 (9th Cir. 1993) (quoting *United States v. Aichele*, 941 F.2d 761, 767) (9th Cir. 1991)).

At sentencing, the district court found that Doe's testimony that he engaged in criminal conduct for the purpose of gaining information to give to the FBI was not believable, and that Doe was not truthful to the government or to the jury when he testified. Although Doe challenges this finding on the ground that he could subjectively believe that he was helping the FBI, even though the jury and judge

decided that this belief was not reasonable, the district court's findings are well supported by the record and not clearly erroneous.

We have previously held that a defendant's persistence in maintaining that he lacked criminal intent because he engaged in criminal actions at the behest of the government is "incompatible with acceptance of responsibility." *Burrows*, 36 F.3d at 883. In *Burrows*, the defendant "freely admitted committing the *actus reus* of the crime," but "maintained even after trial that he had a complete defense based on his purported lack of *mens rea*." *Id.* We held that the defendant's continued insistence that he was working for the government showed that he "placed responsibility on others and accepted none himself." *Id.* Here, like in *Burrows*, Doe's defense was inconsistent with accepting responsibility.[6] *See id*. Doe's argument that he is eligible for the downward adjustment because he admitted to criminal acts and expressed remorse fails, given his continued insistence that he lacked criminal intent. The district court did not err in determining that Doe failed

---

[6] Doe claims that he did not deny his criminal intent at trial. He reasons that: (1) *Doe* held that a public authority defense does not negate mens rea; (2) Doe raised a public authority defense at trial; (3) therefore, Doe did not deny his criminal intent. This argument fails because the court's finding that Doe did in fact deny his criminal intent at trial is well supported by the record. Indeed, Doe requested a jury instruction stating that if the jury accepted his public authority defense, "the defendant may not be convicted of violating the criminal statute, because the requisite intent is lacking." *Doe*, 705 F.3d at 1141.

to show he accepted responsibility for his offense, and it therefore did not err in its denial of the downward adjustment.

**AFFIRMED**.

Counsel Page

Carolyn Wiggin (argued), Assistant Federal Defender; Heather E. Williams, Federal Defender, Sacramento, California, for Defendant-Appellant John Doe.

Kathleen Servatius (argued), Assistant United States Attorney; Benjamin B. Wagner, United States Attorney; Camil A. Skipper, Appellate Chief, Fresno, California, for Plaintiff-Appellee United States of America.