**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-30025 |
| Plaintiff-Appellee, | D.C. No.<br>1:17-cr-00150-EJL-1 |
| v. | |
| JOSE ORIBEL PONCE-ULLOA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted October 29, 2020
Portland, Oregon

Before: TASHIMA, GRABER, and IKUTA, Circuit Judges.
Partial Dissent by Judge TASHIMA

Jose Oribel Ponce-Ulloa appeals the district court's imposition of his 240-

month sentence. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742(a) and affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

The district court did not err in imposing a two-level enhancement for possession of a firearm. U.S. Sent'g Guidelines Manual (U.S.S.G.) § 2D1.1(b)(1). The district court did not clearly err in finding, by a preponderance of the evidence, that Ponce possessed the firearm during the commission of the offense, which refers to the entire course of criminal conduct, including all "relevant conduct" as defined in § 1B1.3 of the Guidelines. *See United States v. Willard*, 919 F.2d 606, 610 (9th Cir. 1990) ("Thus, for purposes of the firearm enhancement, the court properly looked to all of the offense conduct, not just the crime of conviction."); *United States v. Burnett*, 16 F.3d 358, 361 (9th Cir. 1994). Negotiations for future drug transactions may be considered as relevant conduct. *See United States v. Becerra*, 992 F.2d 960, 963, 966 (9th Cir. 1993) (holding that conversations and meetings "may be considered as relevant conduct . . . even if the drugs are never produced"). The evidence showed that Ponce admitted at sentencing that he possessed the firearm when he returned from Mexico, that in March 2017, following his return from Mexico, Ponce met with an undercover officer and discussed (among other things) arrangements for future drug transactions, and that the government found the firearm while searching Ponce's home in May 2017, less than two months after the March 2017 meeting. This evidence is sufficient to

establish that Ponce possessed a firearm while engaged in relevant conduct. *See United States v. Pitts*, 6 F.3d 1366, 1373 (9th Cir. 1993).

The district court did not err in relying on trial testimony to determine the amounts of cocaine and mixtures of methamphetamine that could be attributed to Ponce. U.S.S.G. § 2D1.1(c); *see United States v. Alvarez*, 358 F.3d 1194, 1213 (9th Cir. 2004). Any error in the district court's calculation was harmless, because Ponce sold more than 3,000 kg in converted drug weight of pure methamphetamine, and therefore his base offense level would remain 32 regardless whether the calculation included cocaine and mixtures of methamphetamine. U.S.S.G. § 2D1.1(c)(4). The district court did not abuse its discretion in implicitly rejecting Ponce's argument that the Sentencing Guidelines improperly treats the quantity of pure methamphetamine as equivalent to ten times the quantity of a mixture of methamphetamine for sentencing purposes. There is no obligation for a district court to depart from the Guidelines on policy grounds. *United States v. Carper*, 659 F.3d 923, 925 (9th Cir. 2011).

The district court did not abuse its discretion in applying the two-level premises enhancement. U.S.S.G. § 2D1.1(b)(12). At trial, Ponce testified that he had told the undercover officer that he had a stash house, also known as a clavo:

Q: And you also told Detective Bustos that you had a stash house also

known as a clavo?

A: Exactly

. . . .

Q: And when you were talking to Detective Bustos, you didn't say it was somebody else's stash house, did you?

A: No.

Q: You said it was your stash house?

A: Exactly.

While Ponce also testified that he was under duress when he told Detective Bustos that he had a stash house, the district court did not clearly err in resolving this conflicting testimony and finding that Ponce had a stash house. *See United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008). The district court properly resolved Ponce's objection to the premises enhancement when it adopted the PSR at sentencing. *United States v. Williams*, 41 F.3d 496, 498 (9th Cir. 1994) ("[W]here the district court has received the PSR and the defendant's objections to it, allowed argument to be made and then adopted the PSR, no more is required under Rule 32(c)(3)(D).").

The district court did not err in applying the two-level organizer enhancement. U.S.S.G. § 3B1.1(c). The government adduced evidence that before

Ponce went to Mexico, he introduced Diaz-Araiza to an undercover officer and directed Diaz-Araiza to call the officer to continue selling methamphetamine to him while Ponce was gone. Diaz-Araiza called the officer and sold him methamphetamine. Upon his return to the United States, Ponce explained that Diaz-Araiza was no longer working with him because he wanted to sell methamphetamine on his own. Based on this evidence, Diaz-Araiza qualified as a "participant" because he had been working with Ponce and was "criminally responsible for the commission" of the drug offense. *See* U.S.S.G. § 3B1.1, cmt. n.1. Ponce exercised his "influence and ability to coordinate" drug transactions through Diaz-Araiza, and therefore was responsible as an organizer. *See United States v. Doe*, 778 F.3d 814, 818, 823–26 (9th Cir. 2015) (holding that a defendant was an organizer when he gave a buyer pricing information and a seller's contact information, but was not present for the transaction and did not hold a supervisory role); *see also United States v. Bonilla-Guizar*, 729 F.3d 1179, 1187 (9th Cir. 2013). The government did not need to show that Ponce had a supervisory role in the offense. *See Doe*, 778 F.3d at 825.

The district court did not abuse its discretion in refusing to allow Ponce to present documents to challenge the government's trial evidence and to rehabilitate his credibility; these issues had already been determined at trial by the jury. *Cf.*

5

*Oregon v. Guzek*, 546 U.S. 517, 526 (2006). Further, Ponce failed to carry his burden of establishing that the documents he sought to introduce would show that the government's evidence at trial was false or that Ponce was credible. *See United States v. Kimball*, 975 F.2d 563, 567 (9th Cir. 1992) ("One cannot allege that there are mistakes and then stand mute without showing why they are mistakes." (internal quotation marks omitted)). Therefore, Ponce's due process claim fails.

**AFFIRMED.**

*United States v. Ponce-Ulloa*, No. 19-30025

TASHIMA, Circuit Judge, dissenting in part:

I concur in all of the majority's memorandum, except for its holding that "[t]he district court did not err in imposing a two-level enhancement for possession of a firearm, U.S.S.G. § 2D1.1(b)(1)," Memo. at 2, from which I dissent.

In *United States v. Pitts*, 6 F.3d 1366, 1373 (9th Cir. 1993), a case relied on by the majority, we held:

> The district court considered the shotguns confiscated on March 3,1991 as part of the "entire course of criminal conduct." U.S.S.G. § 1B1.3(a)(2). In this case, appellant was not, however, charged with conspiracy. Instead, he was charged with four separate counts of distribution. He was convicted of two of those counts, one of wich occurred on May 29, 1991 and one which occurred on July 31, 1991. Because the shotguns from the March 3, 1991 arrest had already been confiscated, appellant could not have "possessed" them on May 29, 1991 or July 31, 1991. Given that the guns from the March 3, 1991 arrest were confiscated and the fact that appellant was not charged with conspiracy, we hold appellant did not possess the shotguns for purposes of the May 29, 1991 and July 21, 1991 offenses. Because he no longer possessed these shotguns during the offenses for which he was convicted, the weapons certainly were not connected with them.

The facts in this case parallel the facts recited above from *Pitts*, except that here, the time lapse between any possible possession of the firearm and the crimes of conviction is much greater. Here, the firearm was found in May 2017, and the offenses of conviction were between May and July, 2016, *one year before discovery of the firearm.* The majority relies on a "discussion" with an undercover

officer in March 2017 as part of "relevant conduct." But mere speech of which nothing comes, with nothing more, is not "conduct."[1] and the majority cites no case to the contrary.

Because I would reverse the district court's imposition of the firearm enhancement and remand for resentencing without that enhancement, I respectfully dissent from the majority's affirmance of that enhancement.

---

[1] In fact, although the record is not well-developed on this point, the discussion may even have been part of a sentencing entrapment scheme.