**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10300 |
| *Plaintiff-Appellee*, | D.C. No. 1:21-cr-00110-HG-1 |
| v. | |
| DANIEL K. VINGE, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Argued and Submitted October 4, 2023
University of Hawaii Manoa

Filed November 8, 2023

Before: Marsha S. Berzon, Eric D. Miller, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge VanDyke

# SUMMARY[*]

## Criminal Law

The panel affirmed a sentence for possession with intent to distribute methamphetamine, in a case in which Daniel Vinge argued that the district court should not have applied the leader-or-organizer enhancement under Section 3B1.1(c) of the Sentencing Guidelines because no evidence suggests that he "exercised control over others" in the organization.

Because recent cases have not been entirely clear with respect to the distinction between an organizer and a leader under § 3B1.1(c), the panel reiterated that the level of control required to be an organizer is only "the ability and influence necessary to coordinate the activities of others to achieve the desired result." Applying that understanding, the panel held that the facts in the presentence report adopted by the district court more than support the enhancement's application here.

The panel held that the district court did not abuse its discretion in imposing a longer sentence on Vinge than his coconspirator, as the two were not similarly situated.

The panel wrote that Vinge's challenge to a supervised release condition restricting him from interacting with felons is not yet ripe. The panel thus affirmed the sentence without prejudice as to the challenged condition such that Vinge may raise the argument again by asking the district court to modify the condition when the issue is no longer speculative.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Harlan Y. Kimura (argued), Harlan Y. Kimura AAL ALC, Honolulu, Hawaii, for Defendant-Appellant.

Marshall H. Silverberg (argued), Assistant United States Attorney; Micah Smith, Chief of Appeals; Clare E. Connors, United States Attorney; United States Attorney's Office, Honolulu, Hawaii; for Plaintiff-Appellee.

**OPINION**

VANDYKE, Circuit Judge:

Daniel Vinge participated in a drug distribution operation in Hawaii. He appeals his sentence for possession with intent to distribute methamphetamine and heroin, arguing that the district court should not have applied the leader-or-organizer enhancement under § 3B1.1(c) of the Sentencing Guidelines because no evidence suggests that he "exercised control over others" in the organization. *United States v. Kabir*, 51 F.4th 820, 826 (9th Cir. 2022) (internal quotation marks omitted). Because our recent cases have not been entirely clear with respect to the distinction between an organizer and a leader under § 3B1.1(c), we reiterate that the level of control required to be an organizer is only "the ability and influence necessary to coordinate the activities of others to achieve the desired result." *United States v. Doe*, 778 F.3d 814, 824 (9th Cir. 2015).

**BACKGROUND**

Daniel Vinge pleaded guilty to possession with intent to distribute methamphetamine and heroin. In early 2021,

investigators identified a suspicious parcel en route from Las Vegas to Maui. After determining that the parcel contained about 24 pounds of methamphetamine and three pounds of heroin, the investigators conducted a controlled drop of the parcel. They removed the drugs, placed a tracking device and beeper in the parcel, and delivered the parcel to its destination, the home of Vinge's coconspirator, Genghis K. Kaihewalu. When Vinge retrieved and opened the parcel, investigators entered Kaihewalu's home, prompting Vinge to flee, discarding small bags of cocaine. Vinge's and Kaihewalu's hands were covered in traces of powder that investigators had placed in the parcel before the controlled drop.

After waiving his Fifth Amendment rights, Vinge made incriminating statements about both the intercepted shipment and past drug shipments in which he was involved. He made further statements during his change of plea hearing clarifying the process by which he obtained and distributed the drugs. He explained that he would reach out to his source on the mainland, pool money from his friends on the island who "want[ed] to put in and buy something," place the order, set the price, and then distribute the drugs once they arrived.

Vinge's coconspirator, Kaihewalu, pleaded guilty under a plea agreement and was sentenced to 120 months' imprisonment. Vinge pleaded guilty without a plea agreement. Vinge's final presentence report contained a two-level enhancement for his role as "an organizer or leader." His total offense level was 37 and his Criminal History Category was II, making his sentencing range under the Sentencing Guidelines 235 to 293 months in prison. The district court departed downward and sentenced Vinge to 200 months.

The district court also imposed conditions of supervised release, including a prohibition on interacting with felons without advance permission from the probation officer. Vinge's wife had recently entered guilty pleas to felony charges, which the state court later deferred accepting for a four-year period, in an unrelated state case.

Vinge timely appealed his sentence, arguing that the district court (1) erred in applying the leader-or-organizer enhancement; (2) abused its discretion in imposing a sentence disproportionate to Kaihewalu's; and (3) erred in imposing a condition of supervised release preventing him from interacting with his wife.

## STANDARDS OF REVIEW

"When reviewing sentencing decisions, we review the district court's identification of the relevant legal standard de novo, its factual findings for clear error, and its application of the legal standard to the facts for abuse of discretion." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 959–60 (9th Cir. 2022); *see also United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). When trial counsel fails to object to a supervised release condition, we review that condition for plain error. *United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012).

## DISCUSSION

### I. The district court did not abuse its discretion in applying the leader-or-organizer enhancement.

Under the federal sentencing guidelines, a two-level sentencing enhancement is appropriate "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). For the enhancement to apply, "there must be 'evidence that the

defendant [1] exercised some control over others involved in the commission of the offense or [2] was responsible for organizing others for the purpose of carrying out the crime.'" *Doe*, 778 F.3d at 823 (quoting *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012)). Vinge argues that this enhancement should not apply because although he played a central role in the drug distribution organization, he did not exercise control over the other participants.

As we explained in *Doe*, the organizer enhancement applies when the defendant *either* "exercised some control over others … *or* … was responsible for organizing others …." 778 F.3d at 823 (internal quotation marks omitted) (emphasis added). *Doe* explicitly rejects the proposition that the enhancement always requires "supervision and some degree of control over others." *Id*. at 825. Because the enhancement applies to four categories of participants— "organizers, as well as … supervisors, leaders, or managers"—and "effect is given to all its provisions, so that no part will be inoperative or superfluous," "[a]n organizer need not … be a supervisor or a superior in a hierarchy of criminal associates." *Id*. at 824 (internal quotation marks omitted). Instead, the enhancement "applies to defendants who have the ability and influence necessary to coordinate the activities of others," even if they do not supervise or control the other participants. *Id*. at 824. In other words, "a defendant who has the 'organizational authority' necessary to coordinate the activities of others to achieve a desired result is an 'organizer.'" *Id*. at 823 (internal citation omitted) (quoting *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998)). Based on this understanding, we observed in *Doe* that "the organizer enhancement is appropriately applied to defendants who coordinate drug transactions," just as Vinge did here. *Id*. at 823**.**

Vinge disagrees that *Doe* controls his case, arguing that subsequent cases require "control" even under § 3B1.1(c)'s organizer category.  Vinge's confusion is not entirely misplaced.  Though *Doe* provides a straightforward explanation of what is required for the leader-or-organizer enhancement, our subsequent cases have arguably been less clear.  Vinge relies on three cases in particular.

First, in *United States v. Holden*, we determined that the leader-or-organizer enhancement did not apply when the defendant lacked control *or* influence over his coconspirator. 908 F.3d 395, 402 (9th Cir. 2018).  We reiterated that the evidence must show that the "defendant had control over other participants *or* organized other participants," and that organization requires "the necessary influence and ability to coordinate" coconspirators."  *Id*. (emphasis added) (alterations and internal quotation marks omitted).  We also emphasized that it is insufficient "for a defendant to have organized property or activities—the defendant must have organized *participants*."  *Id.*

Vinge points to this language in *Holden* and argues that because "[m]ere facilitation" is not enough, *id.* (emphasis omitted), control is required.  While *Holden*'s language might be read to require more direct authority over people than *Doe* required, it does not need to be read that way.  And we decline to read *Holden* as conflicting with *Doe*.  As in *Holden*, we explained in *Doe* that it is not enough to organize *things*.  We noted that "the defendant must have been the organizer, leader, manager, or supervisor *of one or more other participants*."  778 F.3d at 823 (internal quotation marks omitted).  So *Holden* did not announce a new rule different from *Doe*.

*Holden* is also different in an important way from *Doe* and from Vinge's case. In *Holden*, the criminal activity involved only two codefendants who exercised equal roles in planning and coordinating the activity and evenly split the profits. 908 F.3d at 402. Unlike in *Doe*, where the defendant influenced others in the organization by "ensur[ing] the drugs, money, and participants arrived when and where needed," 778 F.3d at 826, in *Holden* the two participants agreed on a plan and executed it together, 908 F.3d at 402. There was no evidence that either participant "exercised sufficient control *or* organizational authority over" his coconspirator. *Id*. at 403 (emphasis added).

Second, in *United States v. Harris*, we explained that "[t]o qualify as" an organizer or leader, the defendant "must have exercised 'control over others.'" 999 F.3d 1233, 1235 (9th Cir. 2021) (quoting *United States v. Avila*, 95 F.3d 887, 892 (9th Cir. 1996)). *Harris* discussed only the leadership prong of the *Doe* test and explained that without "evidence that [the defendant] exercised control over [his coconspirator], the district court abused its discretion in applying the leadership enhancement." *Id*. at 1237. We made clear that while "[t]he enhancement may also apply if the defendant exercises organizational authority over others," that was not at issue because "there was no criminal organization" in *Harris*. *Id*. at 1235 n.1 (internal quotation marks omitted). Because *Harris* explicitly does not interpret the "organizational authority" basis for the enhancement, its discussion of control is not relevant to that basis. *Id*.

Finally, in *Kabir*, we tersely stated that "[t]o qualify as an organizer or leader, a defendant must have exercised *control over others*." 51 F.4th at 826 (emphasis added) (internal quotation marks omitted). But we went on to explain that only "some control," which could include

"organizational responsibility," is necessary to apply the enhancement. *Id*. (internal quotation marks omitted). "*[S]ome* control" in *Kabir* is not in conflict with *Doe*'s recognition that *supervisory* control is unnecessary for the organizer enhancement. *Id*. (emphasis added). The ability to coordinate and influence others necessary for organizational authority could also be characterized as a form of "control." To the extent that "control" is required for an organizer role, it is this form, which includes influence and coordination. Our caselaw has never required direct, supervisory control over others in order to apply the organizer sentencing enhancement.[1]

We thus reiterate that for the organizer enhancement to apply, what is required is "the necessary influence and ability to coordinate the behavior of others so as to achieve the desired criminal result." *Doe*, 778 F.3d at 826. These softer forms of authority or control are sufficient for a determination that a defendant is an organizer. Applying that understanding, the facts in the presentence report adopted by the district court more than support the enhancement's application here. Vinge admits he "gathered up everybody's money," placed the order with his contact on the mainland, followed the tracking, picked up the packages, "g[a]ve [the drugs] to the people" on the island, and collected the proceeds. These activities are enough to support the district court's determination that Vinge coordinated and exercised organizational authority over the

---

[1] Importantly, the analysis in *Kabir* also suggests that the record in that case would have supported the enhancement under either a leadership or organizer role. The defendant in *Kabir* both gave "directives" to his coconspirators (evincing supervisory control) and "arranged" for their travel (showing organizational authority). 51 F.4th at 826–27.

other participants in the scheme. The district court did not abuse its discretion by applying the enhancement.

## II. The district court did not abuse its discretion in imposing a longer sentence on Vinge than his coconspirator.

In determining an appropriate sentence, a district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Vinge argues that because he received the leader-or-organizer enhancement, his sentence of 200 months was disproportionate to his coconspirator's sentence of 120 months. But for two reasons, Vinge and Kaihewalu were not "similarly situated," so the disparity was not unwarranted. *United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014).

First, the district court clarified that, while Vinge and Kaihewalu "were both involved" in the conspiracy, it did not think "they were both equal" in their roles. Vinge's argument that his sentence is an unwarranted deviation from Kaihewalu's essentially repeats his argument opposing the enhancement. For the reasons explained above, that enhancement was appropriate.

Second, even putting the enhancement aside, Vinge and Kaihewalu were not similarly situated. Unlike Vinge, Kaihewalu signed a plea agreement that contained certain concessions in exchange for the 120-month sentence, including waivers of his right to appeal and his eligibility for a "safety valve." *See* 18 U.S.C. § 3553(f). Kaihewalu's involvement in the scheme was also far less sophisticated. Unlike Vinge, he did not manage or earn money from "subdistributors," and he did not place orders at all.

Kaihewalu also had significant health issues that distinguished him from Vinge, including obesity, diabetes, and a leg amputation. Given those distinctions, the district court did not abuse its discretion in imposing Vinge's 200-month sentence.

### III. Vinge's challenge to his supervised release condition is not yet ripe.

Finally, we do not address whether the district court erred in imposing Standard Condition Number 8, which restricts Vinge from interacting with felons. Vinge's challenge is not yet ripe. The state court granted his wife's Motion for Deferred Acceptance of Guilty Plea, and the four-year deferral period began on January 19, 2023. She may never be convicted of the felony charges. We thus affirm the sentence the district court imposed, but without prejudice as to the challenged condition of supervised release such that Vinge may raise the argument again by asking the district court to modify the condition when the issue is no longer speculative.[2] *See* 18 U.S.C. § 3583(e)(2).

**AFFIRMED**.

---

[2] Vinge's Request for Judicial Notice, filed July 11, 2023, is granted.